**RAMBUS, INC., Plaintiff,**

v.

**INFINEON TECHNOLOGIES AG, et al., Defendants.**

**No. CIV. 3:00CV524.**

United States District Court,
E.D. Virginia,
Richmond Division.

Feb. 18, 2004.

As Amended Feb. 26, 2004.

Charles Torrence Armstrong, Warren Eugene Zirkle, McGuireWoods LLP, McLean, VA, Brian Charles Riopelle, Robert Michael Tyler, McGuireWoods LLP, Richmond, VA, Christian Chadd Taylor, Kirkland & Ellis, Chicago, IL, John Michael Desmarais, Steven John Lever, Michael Aaron Fisher, Scott Richard Samay, Paul Arthur Bondor, Michael Peter Stadnick, Kirkland & Ellis, New York City, for Defendants.

## MEMORANDUM OPINION

PAYNE, District Judge.

This matter is before the Court on the motion of the Defendants, Infineon Technologies AG, Infineon Technologies North America Corp. and Infineon Technologies Holding North America, Inc. (hereinafter collectively "Infineon"), pursuant to Fed. R.Civ.P. 15(a), to amend their Answer and Counterclaims against the Plaintiff, Rambus, Inc. ("Rambus"). For the reasons set forth below, the motion for leave to amend is granted.

## STATEMENT OF FACTS

To help put Infineon's motion for leave to amend in context, it is necessary briefly to survey the history of the case, including Rambus' complaint, the nature of Infineon's original counterclaims, and the posture of this case following a trial in this Court and an appeal to the United States Court of Appeals for the Federal Circuit.

Rambus develops, secures patents on, and licenses technologies to companies that manufacture semiconductor memory devices. Rambus does not manufacture any such devices, instead relying for revenue on the licensing of its patent portfolio. In 1990, Rambus filed United States Patent Application Serial Number 07/510,898 with claims directed to Dynamic Random Access Memory, or "DRAM" technology.

Michael W. Smith, Rowland Braxton Hill, IV, Christian & Barton LLP, Richmond, VA, Alexander H. Rogers, Gray Cary Ware & Freidenrich, LLP, San Diego, CA, Peter Andrew Detre, Martin Douglas Bern, Munger Tolles & Olson LLP, San Francisco, CA, Gregory Paul Stone, Kelly Max Klaus, Sean Paul Gates, Sarah Kurtin, Catherine Florence Augustson, Munger Tolles & Olson LLP, Los Angeles, CA, John Michael Guaragna, Gray Cary LLP, Austin, TX, for Plaintiff.

The United States Patent and Trademark Office ("PTO") determined that the application covered several independent inventions and thus issued an eleven-way restriction requiring Rambus to elect one invention to pursue in its application. In response, Rambus filed numerous divisional and continuation applications based on its original application. Numerous DRAM patents have issued as a result. These patents are directed to several DRAM-related technologies: Rambus DRAMs ("RDRAMs"), Synchronous Dynamic Random Access Memory ("SDRAM") and Double Data Rate Synchronous Dynamic Random Access Memory ("DDR–SDRAM").[1]

On August 8, 2000, Rambus brought this action against Infineon, alleging infringement of several DRAM-technology related patents. In response, Infineon raised numerous affirmative defenses and asserted several counterclaims, some of which related to Rambus' interaction with the Joint Electronic Devices Engineering Council ("JEDEC"), an industry standard-setting body of which Rambus was a member from December 1991 to June 1996. *See Rambus, Inc. v. Infineon Tech. AG*, 318 F.3d 1081, 1084–86 (Fed.Cir.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 227, 157 L.Ed.2d 135 (2003).

Before trial, an opinion was issued pursuant to *Markman v. Westview Instrs. Inc.*, 52 F.3d 967 (Fed.Cir.1995) (en banc), *aff'd* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), construing the disputed claim terms of the patents-in-suit. Thereafter, Rambus abandoned, before trial, the charge of infringement as to one of the patents-in-suit. After the presentation of Rambus' infringement case, judgment as a matter of law ("JMOL") was granted in Infineon's favor on the remaining pat-

ents-in-suit, thereby making it unnecessary for Infineon to proceed on several of its affirmative defenses and counterclaims. Infineon's counterclaim for fraud was tried to a jury which found Rambus liable on Infineon's counterclaim for actual and constructive fraud. This Court, however, granted Rambus' post-trial motion for JMOL as to the constructive fraud claim and as to that part of the actual fraud verdict related to the DDR–SDRAM standard of JEDEC. *Rambus, Inc. v. Infineon Tech. AG*, 164 F.Supp.2d 743, 767 (E.D.Va.2001). Rambus' motion for JMOL as to the SDRAM standard was denied and judgment was entered on that verdict.

On appeal, a divided panel of the United States Court of Appeals for the Federal Circuit affirmed in part and reversed in part. *Rambus, Inc.*, 318 F.3d at 1106. Respecting the actual fraud verdict, the majority held that the JEDEC patent disclosure policy applied only to patent claims that reasonably read on or covered the standard under consideration by JEDEC and that, although Rambus wanted to obtain claims covering SDRAM standards, it did not in fact obtain any SDRAM patent claims while it was a member of the JEDEC. *Rambus, Inc.*, 318 F.3d at 1103–04. In reaching this conclusion, the Federal Circuit also held that:

> The record shows that Rambus's claimed technology did not fall within the JEDEC disclosure duty. The record shows at most that Rambus wanted to obtain claims covering the SDRAM instead. Some of that evidence does not put Rambus in the best light. Rambus thought it could cover the SDRAM standard and tried to do so while a member of an open standards-setting committee. While such actions impeach Rambus's

---

1. These technologies are described in some detail at *Rambus, Inc. v. Infineon Tech. AG,*

164 F.Supp.2d 743, 747–48 (E.D.Va.2001).

business ethics, the record does not contain substantial evidence that Rambus breached its duty under the EIA/JEDEC policy.

*Id.* at 1104. The Federal Circuit remanded the case to this Court to "reconsider infringement" in light of its decision respecting claim construction. *Id.* at 1095.

Now on remand, Infineon has moved for leave to amend its Substituted First Amended Answer and Counterclaims. Specifically, pursuant to Fed.R.Civ.P. 15(a), Infineon seeks leave to amend in order to assert a counterclaim for unfair competition under Cal. Bus. & Prof.Code § 17200.

Infineon's motion must be considered in perspective of the case as it will be tried on remand. To begin, there will be a trial on Rambus' claims that Infineon has infringed Claim 26 of U.S. Patent 5,954,804, Claims 1 and 2 of U.S. Patent 5,953,263, and Claim 18 of U.S. Patent 6,034,918. Transcript of Hearing, January 8, 2004, at 39–59 (hereinafter "1/8/04 Tr."). With but two exceptions, all of Infineon's affirmative defenses will be tried.[2] Thus, the trial on remand will involve the defenses of noninfringement, invalidity due to indefiniteness, patent misuse, estoppel, laches, laches in the PTO, unclean hands, and inequitable conduct in the procurement of the patents-in-suit. Some of these affirmative defenses will be supported, in part, with evidence about Rambus' conduct as respects JEDEC, but none depend entirely on such evidence.

With the exception of Counts 1, 2, 4, and 12, none of Infineon's original counterclaims remain in the case. *See* 1/8/04 Tr., at 67–101. Count 12 alleges monopolization in violation of the Sherman Act, 15 U.S.C. § 2.[3] Infineon's monopolization counterclaim[4] alleges that Rambus has acquired monopoly power in the market for DRAM technology and the market for the DRAM's themselves. According to Count 12, Rambus allegedly acquired the monopoly power by a number of means, including intentionally not citing prior art and misleading the PTO to secure patents on DRAM technology that is covered by JEDEC standards, (*e.g.*, ¶¶ 93, 249–252), manipulating JEDEC and acquiring information from JEDEC to achieve these results (*e.g.*, ¶¶ 93, 94, 254), asserting and litigating unlawfully obtained patents against the entire DRAM industry (*e.g.*, ¶¶ 96, 253), and engaging in other predatory, anticompetitive, and exclusionary conduct.[5]

The newly proffered counterclaim, Count 15, alleges that Rambus has violated California's unfair competition statute. Count 15 incorporates by reference much of the alleged misconduct that is the predicate for Count 12, the monopolization count. *See* Proffered Amended Counterclaim, at ¶ 275 (incorporating ¶¶ 74–196 which in ¶ 242 are incorporated in Count 12).[6] But, the unfair competition counterclaim goes beyond the allegations of the monopolization count. For instance, to the anticompetitive conduct that is the basis for the monopolization charge, Count 15

---

2. Infineon will not proceed with the following affirmative defenses: unenforceability due to waiver and implied license.

3. Monopolization is also a crime under 15 U.S.C. § 2.

4. Count 12 is paragraphs 242 through 259 of the proffered amendment but paragraph 242 incorporates by reference preceding paragraphs 74–196.

5. Several other paragraphs in the series ¶¶ 74–196 elaborate on these allegations and make other ones.

6. Some, but certainly not all, of the incorporated allegations are of little, if any, efficacy by virtue of the decision of the Federal Circuit on Infineon's fraud counterclaims.

adds that Rambus, beginning in 1998, developed and implemented a policy of destroying documents that would be adverse to its posture in forthcoming litigation against DRAM manufacturers that did not take Rambus licenses. And, in support thereof, Infineon cites documents and testimony produced by compulsion earlier in this action. Infineon also alleges that, having destroyed documents as part of its preparation for litigation to enforce its patents, Rambus, in furtherance of its anticompetitive scheme, engaged in various forms of litigation misconduct, such as discovery abuse and tendering false deposition testimony, free from the constraints that would exist had the documents not been destroyed before the litigation began and thereafter. And, Infineon proffers specific evidence to support that assertion as well. Taken together, Infineon alleges that the monopolistic scheme, the manipulative and bad faith participation in the JEDEC-standard setting process, the spoliation of documents as a key ingredient for planned patent litigation, and the deliberate misconduct in DRAM-related litigation is actionable as unfair competition under the California statute.

Against this background, the issue to be decided is whether Infineon's motion for leave to add Count 15 should be granted or whether, as Rambus urges, it should be denied.

## DISCUSSION

Infineon contends that Rambus' monopolistic conduct, combined with its behavior at JEDEC, its alleged document spoliation and its later litigation misconduct,[7] constitutes a violation of Cal. Bus. & Prof.Code § 17200. It is necessary, therefore, to review somewhat the meaning and scope of the statute at issue, Cal. Bus. & Prof.Code § 17200.

### I. Cal. Bus. & Prof.Code § 17200

The California unfair competition statute provides in pertinent part:

> [U]nfair competition shall mean and include *any unlawful, unfair or fraudulent business act or practice* and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 ... of Part 3 of Division 7 of the Business and Professions Code [which pertains to advertising].

Cal. Bus. & Prof.Code § 17200 (emphasis added). As construed by the Supreme Court of California, the scope of the unfair competition law is quite broad. *Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 83 Cal. Rptr.2d 548, 973 P.2d 527, 539 (1999).[8] The statute does not proscribe specific practices or contain any specified standards of conduct. Instead, it defines unfair competition to include *any* unlawful, unfair, or fraudulent act or practice. Thus, the statute's "coverage is sweeping, embracing anything that can properly be called a business practice." *Cel–Tech Communications, Inc.*, 83 Cal.Rptr.2d 548, 973 P.2d at 539 (citing, inter alia, *Rubin v. Green*, 4 Cal.4th 1187, 17 Cal.Rptr.2d 828, 847 P.2d 1044, 1052 (1993)). It governs "anti-competitive business practices, as well as injuries to consumers, and has as a major purpose the preservation of fair

---

7. *See generally Rambus, Inc. v. Infineon Tech. AG,* 155 F.Supp.2d 668, 680–83 (E.D.Va. 2001).

8. Jurisdiction over Count 15 would be under 28 U.S.C. § 1367(a). In exercising supplemental jurisdiction over state law claims, a federal court must apply the applicable state's substantive law. *See Johnson v. Hugo's Skateway,* 974 F.2d 1408, 1416 n. 7 (4th Cir.1992). Thus, in considering the legal sufficiency of proposed Count 15, it is necessary to apply the substantive law of California—including any statutory interpretations of Section 17200 given by the California courts—to Infineon's proposed unfair competition counterclaim.

business competition." *Id.* (internal citations and quotations omitted); *see also People v. Cole,* 7 Cal.Rptr.3d 333, 352 (Cal. Ct.App.2003) (stating that Section 17200 is to be construed "broadly" in order to punish "unscrupulous businesses").[9]

■ By proscribing "any unlawful" business practice, Section 17200 borrows violations of other laws, treats them as unlawful practices, and thereby makes them independently actionable. *Cel–Tech Communications, Inc.,* 83 Cal.Rptr.2d 548, 973 P.2d at 540; *see also Pastoria v. Nationwide Ins.,* 112 Cal.App.4th 1490, 6 Cal. Rptr.3d 148, 153 (2003) ("Section 17200 borrows violations of federal, state or local law and [makes them independently actionable].").  Section 17200, however, does more than just borrow from other laws; indeed, it is written in the disjunctive, prohibiting "unlawful, unfair, *or* fraudulent" business acts or practices.  Cal. Bus. & Prof.Code § 17200 (emphasis added). Thus, an act or practice may be actionable under Section 17200 even if it is not specifically proscribed by another statute. *Cel– Tech Communications, Inc.,* 83 Cal. Rptr.2d 548, 973 P.2d at 540.

Historically, when " 'a scheme [was] evolved which on its face violate[d] the fundamental rules of honesty and fair dealing, a court of equity [was] not impotent to frustrate its consummation [merely] because the scheme [was] an original one,' " not yet proscribed by a specific law. *Cel– Tech Communications, Inc.,* 83 Cal. Rptr.2d 548, 973 P.2d at 540 (quoting *American Philatelic Soc. v. Claibourne,* 3

Cal.2d 689, 46 P.2d 135, 140 (1935)). Mindful of that historical fact, the California legislature, in drafting Section 17200, specifically granted the courts broad equitable powers to allow for frustration of such schemes.  *Id.* Recognizing that unfair or fraudulent business practices " 'may run the gamut of human ingenuity and chicanery,' " the California legislature determined that it " 'would be impossible to draft in advance detailed plans and specifications of all acts and conduct' " sought to be prohibited.  *Cel–Tech Communications, Inc.,* 83 Cal.Rptr.2d 548, 973 P.2d at 540 (quoting *People ex rel. Mosk v. Nat'l Research Co. of Cal.,* 201 Cal.App.2d 765, 20 Cal.Rptr. 516, 521 (1962)).  Consequently, the legislature deliberately structured Section 17200 to allow courts to use their equitable powers to foreclose the rather broad range of unfair business conduct that is encompassed by the statute.  *Id.*[10]

■ If, however, the legislature has determined that a particular act or business practice is lawful, that act or business practice may not form the basis for an action under Section 17200.  *Cel–Tech Communications, Inc.,* 83 Cal.Rptr.2d 548, 973 P.2d at 541 ("If the Legislature has permitted certain conduct or considered a situation and concluded that no action should lie, courts may not override that determination.").  For that reason, a piece of specific legislation may form a "safe harbor," and, a plaintiff may not use Section 17200 to "assault that harbor."  *Id.* The particular separate provision that af-

---

9. The broad reach of Section 17200 has, in fact, become the subject of some concern in the academy.  *E.g.,* Joshua Taylor, *Note, Why the Increasing Role of Public Policy in California's Unfair Competition Law is a Slippery Slope in the Wrong Direction,* 52 Hastings L.J. 1131 (2001).

10. Moreover, in keeping with this equitable pedigree, the remedies available under Section 17200 are generally limited to injunctive relief and restitution;  plaintiffs may not receive damages or attorney's fees under the statute.  *Cel–Tech Communications. Inc.,* 83 Cal.Rptr.2d 548, 973 P.2d at 539.

fords safe harbor, however, must actually bar the legal action or clearly permit the challenged conduct. In other words, the mere failure of the legislature to prohibit something does not mean that the legislature intended to make it lawful. In sum, acts or practices that the legislature has determined to be lawful may not form the basis for an action under Section 17200, but acts or practices may, if otherwise unfair, be challenged under Section 17200 even if the legislature has failed to forbid them in some other provision. *Id.*

It is with this substantive predicate of Count 15 in mind that the federal practice provisions respecting amendment of pleadings are to be assessed.

## II. Federal Rule of Civil Procedure 15(a), the *Foman* Factors, and Infineon's Motion for Leave to Amend

■ Rule 15(a) sets forth a permissive standard for amendment by providing that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir.1999).[11] The liberal policy of amendment contained at Rule 15(a) also applies to cases on remand. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir.1986).

■ According to the Supreme Court of the United States, a motion for leave to amend should only be denied when there is undue delay, bad faith or dilatory motives, repeated failure to cure deficiencies by previously-allowed amendments, undue

prejudice, or where the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also United States v. Pittman*, 209 F.3d 314, 317 (4th Cir.2000); *Shealy v. Winston*, 929 F.2d 1009, 1014 (4th Cir. 1991). In addressing the *Foman* factors, Rambus contends that Infineon's proposed amendment would be futile, that granting Infineon leave to amend would cause Rambus to suffer undue prejudice, and that Infineon engaged in undue delay in bringing the Section 17200 claim. These arguments are addressed in turn.

### A. Futility

■ Courts generally favor the "resolution of cases on their merits." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.1980). Thus, the substantive merits of a proposed claim are typically best left for later resolution, *e.g.*, under motions to dismiss or for summary judgment under Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 56, respectively, or for resolution at trial. *Id.* A court, however, may deny a motion to amend on the "ground of futility when the proposed amendment is *clearly insufficient on its face.*" *Johnson*, 785 F.2d at 510 (emphasis added). Hence, the futility analysis under Rule 15(a) necessitates an assessment of the allegations of the claim in perspective of the substantive law on which it is based.

As explained previously, Count 15 alleges that Rambus engaged in an anticompetitive scheme to monopolize and dominate

---

11. Because this is an action arising under the federal patent laws, the decisional law of the United States Court of Appeals for the Federal Circuit, rather than that of the United States Court of Appeals for the Fourth Circuit, is controlling as respects any issues of patent law. *Silicon Image, Inc. v. Genesis Microchip, Inc.*, 271 F.Supp.2d 840, 849 (E.D.Va. 2003). Of course, in deciding procedural matters that are unrelated to patent issues, the Federal Circuit adjudicates in accordance

with the applicable regional circuit law. *Wang Labs., Inc. v. Applied Computer Sciences, Inc.*, 958 F.2d 355, 357 (Fed.Cir.1992). Therefore, because the question of amendment under Rule 15(a) is a procedural matter not peculiar to patent law, Fourth Circuit precedent—as refined by the decisions of the United States Supreme Court—is controlling. *Id.; see also Silicon Image, Inc.*, 271 F.Supp.2d at 849.

the DRAM-technologies market and the market for DRAMs and that, in furtherance of that scheme, Rambus abused and manipulated industry standard-setting processes at JEDEC, willfully destroyed evidence in order to disadvantage adversaries in the DRAM-technologies manufacturing business, and then enforced its patents through a pattern of litigation misconduct. Count 15 also alleges that Rambus' actions have injured competition within the DRAM industry and also injured the general consuming public. Although a cognizable Section 17200 claim need proceed under only one of the statutorily permitted theories (unfair, unlawful, *or* fraudulent acts or business practices), it is unnecessary to elect only one of the permissible grounds of statutory relief. By its clear terms, Infineon's proposed Section 17200 claim alleges all three permissible theories in combination.

First, Infineon alleges that Rambus' acts and business practices violated Section 2 of the Sherman Antitrust Act, *see* 15 U.S.C. § 2, and, therefore, that the proposed amendment is proper under the "unlawful" prong [12] of Section 17200. During the prior litigation in this Court, the Court refused to dismiss Infineon's monopolization counterclaim (Count 12) finding that Infineon had pleaded a legally sufficient claim under 15 U.S.C. § 2. *See* Order, Jan. 29, 2001 (Docket No. 80).[13] In perspective of that ruling and the allegations of Count 15, and considering that the unlawful prong of Section 17200 borrows from other statutes, it is rather clear that the "unlawful" ground of Infineon's proposed Section 17200 counterclaim is not insufficient on its face. *Shealy*, 929 F.2d at 1014.

Second, Count 15 also states a sufficient claim for purposes of Rule 15(a) under the "unfair" aspect of Section 17200. It is true that, because of the open-ended nature of the "unfair" element of Section 17200, courts have not formulated a precise test for what constitutes an "unfair" business practice. *See generally* Peter J. Weid, *Patently Unfair: State Unfair Competition Laws & Patent Enforcement,* 12 Harv. J.L. & Tech. 469, 487 (1999). The Supreme Court of California, however, teaches that the word "unfair" as used in Section 17200 is meant to address and provide remedy against conduct that threatens a violation of an antitrust law, violates the spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition. *Cel–Tech Communications, Inc.,* 83 Cal.Rptr.2d 548, 973 P.2d at 544. Count 15 alleges that Rambus devised a scheme to monopolize the DRAM technology market and the market for DRAMs and implemented the scheme by its conduct before, during, and after participating in the industry-standard setting processes at JEDEC, by instituting litigation over patents, by engaging in document destruction as part of a planned litigation strategy, by engaging in obfuscatory discovery practices, and by engaging in a pattern of litigation misconduct (including the sponsoring of false testimony) with DRAM competitors. Construed consistently with the statute and the decisions implementing it and according Infineon the reasonable inferences from the pleaded facts, that conduct, if proven, would threaten a violation of the antitrust law (Section 2 of the Sherman Act), would violate the spirit of

---

**12.** The "unlawful" prong of Section 17200 borrows violations of other laws, treats them as unlawful acts or business practices and thereby makes them independently actionable. *Cel–Tech Communications, Inc.,* 83 Cal.

Rptr.2d 548, 973 P.2d at 539–40; *Pastoria,* 6 Cal.Rptr.3d at 153.

**13.** That decision was not appealed and thus is the law of this case.

the antitrust law (Section 2 of the Sherman Act), and would otherwise significantly threaten or harm competition. The proposed Section 17200 claim proceeding under the "unlawful" prong, therefore, is not clearly insufficient on its face when the statute is given the construction outlined by California's courts.[14]

Finally, in a Section 17200 allegation involving the "fraudulent" prong, the issue is whether the actions or practices of the defendant were likely to cause members of the consuming public to be deceived. *Kunert v. Mission Fin. Servs. Corp.*, 110 Cal.App.4th 242, 1 Cal.Rptr.3d 589, 606 (2003); *Prata v. Superior Court*, 91 Cal. App.4th 1128, 111 Cal.Rptr.2d 296, 309 (2001). Here, Infineon alleges that Rambus' acts and practices at JEDEC and in the time period leading up to and including this litigation were likely to, and in fact did, deceive members of the consuming public—specifically, Infineon and other DRAM manufacturers who are consumers in the DRAM-technologies market.

For the foregoing reasons, the allegations of Count 15 facially articulate colorable violations under each facet of Section 17200.

## B. Rambus' Contentions Respecting Futility

Rambus, nonetheless, argues that Count 15 is futile because it is foreclosed by the opinion of the Federal Circuit in this case and by several so-called "safe harbors" contained in California law. For the following reasons, those arguments do not withstand scrutiny.

### (1) Whether Count 15 is Foreclosed by the Federal Circuit's Opinion

■ Rambus asserts that the opinion of the Federal Circuit precludes Infineon's proposed counterclaim. To assess this argument, a brief examination of that court's opinion is in order.

The portion of the Federal Circuit's opinion pertinent to this discussion is in section IV entitled "Fraud." *Rambus, Inc.*, 318 F.3d at 1096. The opening paragraphs of that discussion make it quite clear that the Federal Circuit's opinion is addressing a claim of tort-based common law actual fraud. The first substantive element of the fraud claim discussed by the court appears in a subsection entitled "Duty to Disclose." *Id.* In pertinent part, the Federal Circuit held that certain language contained in materials shown at JEDEC meetings imposed a disclosure duty on members of JEDEC. *Id.* at 1098 ("Nevertheless, because JEDEC members treated the language of Appendix E as imposing a disclosure duty, this Court likewise treats this language as imposing a disclosure duty."). As respects the duty, the Federal Circuit held "that the relevant disclosure duty hinges on whether the issues or pending claims are needed to practice the standard." *Id.* at 1100. The Federal Circuit continued: "On this record, a reasonable jury could find only that the duty to disclose a patent or application

---

14. Indeed, the *Cel–Tech Communications, Inc.* court noted that the decisional law interpreting section 5 of the Federal Trade Commission Act, *see* 15 U.S.C. § 45(a), is persuasive in determining whether a particular act or practice is "unfair" under Section 17200. 83 Cal.Rptr.2d 548, 973 P.2d at 543. Infineon's proposed counterclaim mirrors the conduct alleged to have constituted "unfair methods of competition" in the Federal Trade Commission's ("FTC") section 5 action against Rambus, which has survived a motion for summary decision and is currently pending in the FTC. *See generally The Lawyer's Column*, Wash. Post., Dec. 29, 2003, at El. This parallel between 15 U.S.C. § 45(a) and the "unfair" prong of Section 17200 further buttresses a finding that Infineon's proposed counterclaim is not futile.

arises when a license under its claims reasonably might be required to practice the standard." *Id.* Put another way, the court held that, "Rambus's duty to disclose extended only to claims in patents or applications that reasonably might be necessary to practice the standard." *Id.*

Having defined the duty of disclosure, the court then turned to the question "when the duty to disclose arises." *Id.* at 1101. On that score, the Federal Circuit held that "[t]he most a reasonable jury could conclude is that the disclosure duty is triggered when [a JEDEC committee] formally begins [work] on a proposed standard." *Id.* at 1102.

The Federal Circuit next examined whether there was a breach of the duty to disclose as the court had previously defined the duty. On that point, the Federal Circuit concluded "[i]n sum, substantial evidence does not support the jury's verdict that Rambus breached its duties under the EIA/JEDEC policy. Infineon did not show the first element of a Virginia fraud action and therefore did not prove fraud associated with the SDRAM standard. No reasonable jury could find otherwise." *Rambus, Inc.*, 318 F.3d at 1105.[15]

Considering the explicit text of the Federal Circuit's opinion, the Court concludes that the Federal Circuit meant what it said in clear terms: Infineon did not show the first element of a Virginia fraud action, *i.e.*, "omission in the face of a duty to disclose."

*Id.* at 1096. That result obtained because, under Virginia law, mere silence or the withholding of information does not constitute fraud in the absence of a duty to disclose. *Id.* Simply put, the Federal Circuit found a duty to disclose, defined it, and then articulated when that duty arose. Then, in unmistakably clear terms, the Court concluded that Infineon did not prove fraud.

Without doubt, the Federal Circuit decided the fraud claim before it by conducting a standard tort-based analysis under Virginia common law. The question, however, is whether the Federal Circuit's tort-based analysis and its decision pursuant thereto operates to foreclose Count 15.

The Federal Circuit's decision does not have a preclusive effect as respects the "fraudulent" component of Infineon's Section 17200 counterclaim because the fraud contemplated by Section 17200 bears little or no relationship to a common law fraud action,[16] because a fraud claim within the meaning of Section 17200 "requires only a showing that members of the [consuming] public are likely to be deceived,"[17] and because the typical tort issues of duty and breach of duty are irrelevant.[18] The Federal Circuit's resolution of the issues of duty and breach, while certainly dispositive of any tort-based fraud action, are not dispositive of Infineon's "fraudulent" acts or practices claim under Section 17200. Consequently, the Federal Circuit's deci-

---

**15.** The Federal Circuit then went on to discuss, and affirm, the decision of this Court granting Rambus' motion for JMOL respecting the DDR–SDRAM's standard-setting process because "Infineon did not show that Rambus had a duty to disclose before the DDR–SDRAM's standard-setting process formally began." *Rambus, Inc.*, 318 F.3d at 1105.

**16.** *Committee on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal.3d 197, 197 Cal. Rptr. 783, 673 P.2d 660, 669–70 (1983); *Pra-*

*ta v. Superior Court*, 91 Cal.App.4th 1128, 111 Cal.Rptr.2d 296, 309 (2001).

**17.** *Kunert*, 1 Cal.Rptr.3d at 606.

**18.** *See South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.App.4th 861, 85 Cal. Rptr.2d 301, 317 (1999). In addition, fraud under Section 17200 is a strict liability offense. *People ex rel. Van de Kamp v. Cappuccio, Inc.*, 204 Cal.App.3d 750, 251 Cal.Rptr. 657, 664 (1988).

sion on Infineon's actual fraud claim neither renders Count 15 legally insufficient on its face nor stands as an impediment to amendment under Rule 15(a).

The Federal Circuit opinion likewise does not preclude Count 15 to the extent that it proceeds under the "unfair" prong of Section 17200. That is because: (a) the Federal Circuit's decision on actual fraud was a straight-forward tort analysis that found Infineon's proof wanting on the first element of the tort of fraud; and (b) it is unnecessary to plead or prove the elements of a tort to satisfy the "unfair" component of Section 17200. *See Albillo v. Intermodal Container Servs., Inc.,* 114 Cal.App.4th 190, 8 Cal.Rptr.3d 350, 362 (2003) (citing *Vacanti v. State Comp. Ins. Fund.,* 24 Cal.4th 800, 102 Cal.Rptr.2d 562, 14 P.3d 234, 254 (2001)). Instead, a plaintiff must allege that the defendant's acts or practices threaten a violation of an antitrust law, violate the spirit thereof, or otherwise threaten or harm competition. *Cel–Tech Communications, Inc.,* 973 P.2d at 544. Thus, a claim under the unfair prong of Section 17200 bears little or no resemblance to a common law tort action because such a claim does not turn on issues of duty or breach, but rather on whether the defendant' acts or practices were likely to be injurious to competition. *Albillo,* 8 Cal.Rptr.3d at 362. Nothing in the Federal Circuit's opinion on Infineon's actual fraud claim speaks to whether Rambus' acts or practices were likely to injure competition. Nothing in the opinion, therefore, precludes a claim grounded, in whole or in part, on the "unfair" facet of Section 17200.[19]

Nor, in resolving Infineon's actual fraud claim, did the Federal Circuit address whether Rambus' JEDEC-related conduct was violative of any federal laws. Indeed, the Federal Circuit was never presented with that issue because, at the close of Rambus' case-in-chief, the Court granted JMOL in Infineon's favor on the infringement issues. It, therefore, was no longer appropriate for Infineon to pursue its counterclaim under 15 U.S.C. § 2. As a consequence, neither this Court, the jury, nor the Federal Circuit ever passed on the ultimate validity of Infineon's allegations that Rambus had violated the federal monopoly laws. Nor do any of the findings of the Federal Circuit otherwise preclude a finding of unlawfulness under the unlawfulness prong of Section 17200 based on Rambus' alleged monopolization because the appellate court addressed only the first element of Infineon's common law fraud claim.

In sum, nothing in the Federal Circuit's opinion precludes Infineon's proposed Section 17200 claim. That is especially so at the Rule 15(a) stage where leave to amend should only be denied on grounds of futility when a proposed amendment is clearly insufficient on its face. *Johnson,* 785 F.2d at 510. Rambus' first argument respecting futility, therefore, is rejected.

**(2) Rambus' Safe Harbor Arguments**

■ Rambus also asserts that, to the extent that Infineon's proposed Section 17200 claim relies on document spoliation or other litigation misconduct, it is foreclosed by several "safe harbors" provided by California law. *See Cel–Tech Communications, Inc.,* 83 Cal.Rptr.2d 548, 973 P.2d at 541–42 (discussing "safe harbor" exception to Section 17200). As is true

---

**19.** In fact, although it overturned the jury's finding of fraud, the appellate court stated that the evidence presented at trial "did not put Rambus in the best light," and that Rambus' JEDEC-related acts and practices tended to "impeach Rambus's business ethics." *Rambus, Inc.,* 318 F.3d at 1104. Such statements actually tend to support, rather than foreclose, Infineon's proposed Section 17200 "unfair" prong counterclaim.

with Rambus' arguments respecting the effect of the Federal Circuit's opinion, however, its safe harbor arguments are unconvincing.

Although the precise import of the fact is the subject of dispute, it is an undisputed fact that Rambus instituted a "document retention policy" in 1998 and that this document retention policy resulted in the destruction of documents potentially relevant to this suit. *See Rambus, Inc.,* 155 F.Supp.2d at 682. Infineon's proposed counterclaim alleges that this document spoliation, which, says Infineon, Rambus undertook with premeditation in order to disadvantage litigation adversaries, was part of an anticompetitive scheme to dominate the DRAM-technologies market and the market for DRAMs. Rambus, however, argues that, by virtue of a "safe harbor," the alleged document spoliation cannot be part of a claim under Section 17200. In support of this proposition Rambus relies on *Cedars–Sinai Med. Ctr. v. Superior Ct.,* 18 Cal.4th 1, 74 Cal.Rptr.2d 248, 954 P.2d 511 (1998), a decision in which the Supreme Court of California refused to recognize a common law tort action for spoliation. For several reasons, Rambus' reliance on *Cedars–Sinai Med. Ctr.* is misplaced.

First, *Cel–Tech Communications, Inc.,* the case wherein the Supreme Court of California first fully delineated the safe harbor aspect of Section 17200, teaches that the California legislature, not the California courts, is to be the source of any safe harbor exceptions to Section 17200. On that point, the court made quite clear that "[i]f the Legislature has permitted certain conduct ... and concluded no action should lie, courts may not override that determination." *Cel–Tech Communications, Inc.,* 83 Cal.Rptr.2d 548, 973 P.2d at 541. The principle announced in *Cedars–Sinai Med. Ctr.,* that California does not recognize a common law tort action for spoliation, sprang, of course, not from California's legislative branch, but from its judiciary. Thus, it would be inconsistent with the fundamental instruction of *Cel–Tech Communications, Inc.* to find that the decision in *Cedars–Sinai Med. Ctr.* is a safe harbor for conduct otherwise redressable under Section 17200.

Second, the *Cedars–Sinai Med. Ctr.* decision must be assessed in perspective of the precept announced in *Cel–Tech Communications, Inc.,* that, for the safe harbor exception to apply, another "provision must actually bar the [legal] action or clearly permit the [challenged business] conduct." 83 Cal.Rptr.2d 548, 973 P.2d at 541. Even if the decision announced in *Cedars–Sinai Med. Ctr.* could properly be characterized as a "provision" for purposes of the safe harbor rule (which it cannot), the *Cedars–Sinai Med. Ctr.* court certainly did not bar all legal action alleging spoliation or otherwise clearly permit the intentional destruction of evidence. Quite the contrary, the *Cedars–Sinai Med. Ctr.* court repeatedly decried spoliation as an impermissible litigation tactic constituting "an unqualified wrong." 74 Cal.Rptr.2d 248, 954 P.2d at 521. Indeed, the court went so far as to state that the intentional destruction of evidence "can destroy fairness," thus actually buttressing Infineon's proposed Section 17200 counterclaim. *Id.* at 515.

Third, the substance of the decision in *Cedars–Sinai Med. Ctr.* does not even purport to establish a safe harbor. Instead, noting both California's strong public policy favoring the use of non-tort remedies whenever feasible and the availability of other remedies, the *Cedars–Sinai Med. Ctr.* court simply determined that the costs imposed by an additional tort-based remedy simply outweighed any gain such a tort-based remedy would have provided. *Id.* at 519. In other words, the decision merely

stands for the unremarkable proposition that California does not recognize a common law tort action for damages based on allegations of spoliation. That, contrary to Rambus' argument, does not mean that the decision affords a safe harbor for Section 17200.

Rambus next contends that several other safe harbors foreclose proposed Count 15 to the extent that the counterclaim relies on allegations that, during the litigation leading up to the first trial in this case, Rambus intentionally withheld responsive documents, intentionally failed to identify allegedly privileged documents on a privilege log, served obstructive discovery responses, and provided false or misleading testimony through depositions. In support of this argument, Rambus cites decisions that refuse to recognize independent tort-based remedies for perjury, *see Cedars–Sinai Med. Ctr.*, 74 Cal.Rptr.2d 248, 954 P.2d at 516 (citing *Taylor v. Bidwell*, 65 Cal. 489, 4 P. 491 (1884)), or for the concealment or withholding of evidence, *see id.* (citing *Agnew v. Parks*, 172 Cal.App.2d 756, 343 P.2d 118 (1959)).

The decisions in *Taylor* and *Agnew*, however, like the decision in *Cedars–Sinai Med. Ctr.* that relied on them, simply refused to recognize new common law tort actions for perjury or the concealment of evidence. Those decisions do not bar all type of legal action based on perjury or the withholding of evidence nor do they clearly permit such obviously unacceptable conduct. The fact that no tort-based remedy exists to permit a recovery in damages for these affronts to law does not create a Section 17200 safe harbor for those acts. No California court has so held and this Court declines the invitation to do so.

■ Next, Rambus asserts that Cal. Civ.Code § 47 creates a safe harbor for any communications made in judicial proceedings, and, therefore, that Count 15 is legally deficient to the extent that it relies on assertions that Rambus engaged in intentionally obstructive discovery tactics and failed to identify allegedly privileged documents on privilege logs. Unlike Rambus' other safe harbor arguments, this one is based on a statute, and thus is legislatively created. And, in *Rubin v. Green*, 4 Cal.4th 1187, 17 Cal.Rptr.2d 828, 847 P.2d 1044 (1993), the court found that Cal. Civ. Code § 47(b) does in fact create a Section 17200 safe harbor in certain circumstances. *Rubin*, 17 Cal.Rptr.2d 828, 847 P.2d at 1053–54.

That safe harbor, however, is not absolute. For example, in another part of the same statute, the California legislature provided that Section 47(b) "does not make privileged any communication made in furtherance of an act of intentional destruction or alteration of physical evidence *undertaken for the purpose of depriving a party to the litigation of the use of that evidence.*" Cal. Civ.Code § 47(b)(2) (emphasis added). Many of Infineon's allegations respecting litigation misconduct and obstructionist discovery tactics are predicated on the assertion, to some extent already proven, that Rambus set out intentionally to deprive Infineon and other DRAM manufacturers of the documentary evidence needed to defend themselves in the DRAM-technologies related litigation that Rambus was planning when it embarked on the document destruction program. Considering the language of Section 47(b)(2), it does not appear that Section 47(b) stands as impediment to Count 15.

For the foregoing reasons, the Court rejects Rambus' arguments as to why Infineon's proposed counterclaim is futile.

## C. Delay

Next, Rambus contends that Infineon has delayed unduly in asserting its Section 17200 claim because Infineon has long

been aware of all the conduct upon which it predicates its Section 17200 counterclaim and thus could have asserted such a claim in the prior trial. Consequently, Rambus argues that Infineon has unreasonably delayed in bringing the proposed counterclaim and, therefore, that the proposed amendment should be rejected.

■ The analysis of this argument begins with the controlling rule in the Fourth Circuit that delay alone is an insufficient reason to deny a Rule 15(a) motion for leave to amend. *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999); *Johnson*, 785 F.2d at 509. Thus, even if the Court determined that Infineon has engaged in unreasonable delay, such a finding, standing alone, would be an insufficient basis for denial of Infineon's Rule 15(a) motion.

■ Moreover, on the merits, Infineon has not engaged in unreasonable delay in bringing its Section 17200 counterclaim. First, contrary to Rambus' assertions, much of the information on which Infineon relies in asserting Count 15 did not fully come to light until the eve of the first trial in this action and much of it was not known until after the trial. For instance, after the Court pierced Rambus' attorney-client privilege and ordered disclosure of certain documents, Infineon was able to show that several Rambus executives had lied during their pretrial depositions. *See Rambus, Inc.*, 155 F.Supp.2d at 681–82. The piercing of the attorney-client privilege, however, did not occur until immediately before the original jury trial in this matter. Thus, Infineon could not have brought a Section 17200 claim based upon evidence uncovered as a result of this piercing at the first trial.

Moreover, much of the information relevant to Infineon's proposed Section 17200 claim did not come to Infineon's attention until Rambus produced it in the parallel administrative action currently pending in the FTC. The FTC action did not commence until June 2002, almost ten months after the original trial in this Court had occurred. The evidence uncovered in the FTC action, therefore, surfaced far too late for Infineon's use in the original trial in this Court.

Finally, pursuant to the discovery undertaken in this Court on remand, Rambus has very recently disclosed to Infineon approximately thirty boxes of new documents. Infineon contends that these documents illustrate the true scope and purpose of Rambus' document retention policy and also shed light on Rambus' other litigation misconduct. Thus, Infineon asserts that many of these documents are pertinent to a Section 17200 claim. Of course, because Rambus has only disclosed these document within the last two months, Infineon certainly could not have used them in bringing a Section 17200 claim in the first trial.[20]

Although some evidence supportive of a Section 17200 claim had surfaced before the original trial of this matter, the full scope, contours, and import of the evidence which gives rise to Count 15 did not become apparent until after that trial. Moreover, any delay exhibited by Infineon in bringing the Section 17200 counterclaim is directly traceable to Rambus' own conduct because Rambus, in the pretrial period leading up to the first trial, engaged in dilatory discovery tactics and refused to disclose all documents responsive to Infineon's discovery requests, thereby frustrating Infineon's ability to assert all rele-

20. Furthermore, the very fact that Rambus failed to disclose these documents in the discovery period leading up to the first trial is in-  and-of-itself a potential component of Infineon's Section 17200 claim.

vant defenses and counterclaims. On this record, it cannot be said that Infineon has unreasonably delayed in asserting its Section 17200 counterclaim.

## D. Prejudice

█ Finally, Rambus argues that granting Infineon leave to amend its answer and counterclaims would cause Rambus to suffer prejudice. Rambus contends that allowing the amendment will force it to undertake a large amount of additional discovery. In addition, says Rambus, due to the nature of Infineon's proposed counterclaim, the lawyers working on this case will need to spend many hours familiarizing themselves with the record produced in the FTC action. These contentions lack merit.

The FTC's claims against Rambus were the subject of a ten week administrative trial held from May to August 2003. Over a period of fifty-four days, Chief FTC Administrative Law Judge Stephen McGuire heard testimony from forty-three live witnesses and considered over 1900 documents. Rambus, therefore, is correct to assert that the record from the FTC proceedings is extensive and that it would take a lawyer many hours of diligent work to become familiar with it. The flaw in Rambus' assertion of prejudice on that score is that many of the same lawyers representing it in this action also represent it in the still-pending FTC action.

For example, Gregory P. Stone, Esq., who is Rambus' lead counsel in this action, informed the Court during a conference call that he represented Rambus in the FTC administrative action. Indeed, Mr. Stone informed the Court that he was present for all but one of the fifty-four days of the administrative proceeding.

Thus, even if Rambus is correct to assert that the lawyers representing it in this case need familiarity with the FTC record in order to defend properly against Infineon's proposed counterclaim, its lawyers already have such familiarization. The asserted need of Rambus' attorneys to familiarize themselves with the FTC record, therefore, is not a source of prejudice.[21]

Rambus also asserts that it will be prejudiced because it will not be able adequately to conduct discovery about the fairness or propriety of the acts or business practices at issue by virtue of Count 15. This fairness inquiry, says Rambus, is often gauged by examining the conduct of other similarly situated business entities. See *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.App.4th 861, 85 Cal.Rptr.2d 301 (1999); *Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735, 162 Cal.Rptr. 543 (1980).

For instance, says Rambus, under Infineon's proposed amendment, the Section 17200 counterclaim would involve issues such as whether Rambus engaged in unfair conduct as a JEDEC member or whether it implemented an unfair or fraudulent document retention program. Thus, in order to meet the proposed counterclaim, Rambus asserts that it would need to take discovery concerning the conduct of other JEDEC members so that it could compare its behavior to those of other JEDEC participants in an effort to show that its actions were typical, rather than unfair or anticompetitive. Likewise, Rambus contends that it would need to take discovery respecting other similarly-situated companies and their document retention programs in order to show that its program was typical as opposed to a vehi-

---

21. Moreover, the parties have known for almost a year that a remand was ordered in this case and it has been six months since the FTC hearings were concluded. Thus, Rambus' counsel has had ample time, opportunity, and motivation to become fully familiar with the material that surfaced in the FTC proceedings.

cle of unfair competition. Rambus contends that engaging in such discovery would be time-consuming and expensive and that it would divert much needed resources away from the patent infringement issues central to the suit. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3rd Cir.2001) (noting that "whether allowing an amendment would result in additional discovery, costs, and preparation" are important factors in Rule 15(a) inquiry).

■ Rambus' argument is of dubious efficacy because evidence of industry custom and practice is no defense to otherwise unlawful conduct. *See People ex rel. Van de Kamp v. Cappuccio, Inc.*, 204 Cal. App.3d 750, 251 Cal.Rptr. 657, 665 (1988). Thus, to the extent that Infineon's proposed Section 17200 counterclaim proceeds on a theory of unlawfulness, any information obtained in Rambus' proposed discovery that other companies also engaged in such monopolistic behavior likely would be irrelevant. Likewise, although Infineon does predicate somewhat its Section 17200 counterclaim on Rambus' document retention policy and alleged evidence spoliation,[22] Infineon attacks principally the purpose and the timing of Rambus' institution of the program. Thus, Rambus' proposed discovery concerning the typical substantive components of the document retention programs of engineering firms operating in California would appear, at best, to be pertinent only marginally, if at all, to Infineon's counterclaim.[23]

Moreover, although evidence of industry custom or practice may be helpful to Rambus in defending those elements of Infineon's counterclaim that proceed under the unfair or fraudulent prongs of Section 17200, Rambus has already undertaken much of this discovery. If Rambus really needs to seek additional discovery in order to rebut effectively Infineon's proposed Section 17200 counterclaim, the pretrial schedule in the case provides ample time to do that. Currently, the parties are to complete all fact and expert discovery by March 26, 2004. This should provide ample time for Rambus to undertake any additional discovery. If, however, it should be shown that Rambus, after diligent pursuit of discovery, has had insufficient opportunity to undertake proper discovery, the Court will address the issue at that time.

## CONCLUSION

Rambus has not shown that Infineon's proposed amended counterclaim would be futile, that Infineon has delayed in bringing the claim, or that addition of the claim would cause it to suffer prejudice. The Motion for Leave to File an Amended Answer and Counterclaims of Infineon (Docket No. 500), therefore, is granted.

In reviewing the proffered Second Amended Answer and Counterclaim, however, it appears that the proffered pleading contains much surplusage, including counterclaims and defenses that are no longer in the case, as well as allegations

---

22. Under California law, spoliation consists of the intentional destruction or suppression of evidence so as to prevent an adversary from using it at a trial. *Laborde v. Aronson*, 92 Cal.App.4th 459, 112 Cal.Rptr.2d 119, 122 (2001); *R.S. Creative, Inc. v. Creative Cotton, Ltd.*, 75 Cal.App.4th 486, 89 Cal.Rptr.2d 353, 361 (1999). *Cf.* Cal. Civ.Code § 47(b)(2).

23. Moreover, if Rambus were to obtain evidence in discovery that there is a custom or practice in the community of engineering businesses to destroy documents in order to prevent their use in litigation, such a custom or policy would be impermissible under Cal. Civ.Proc.Code § 2023. Thus, if there is such a custom or practice in the engineering field, its existence would avail Rambus nothing. *Cf. Cappuccio, Inc.*, 251 Cal.Rptr. at 665.

respecting the JEDEC-disclosure duty and Rambus' alleged breach thereof that are incompatible with the Federal Circuit's opinion on actual fraud. Hence, Infineon must revise its Second Amended Answer and Counterclaims to excise such surplusage. That exercise and the product that results from it shall be without prejudice to any properly preserved issues respecting the claims and defenses, if any, as decided at the hearing on January 8, 2004. The Court, however, will not countenance any attempt by Infineon to use the Section 17200 claim as a vehicle to reintroduce affirmative defenses that the Court has already found to no longer be in the case, *e.g.*, waiver or implied license. The Second Amended Answer and Counterclaims, as thusly revised, shall be filed by February 25, 2004 and Rambus shall file its Amended Answer to the Amended Answer and Counterclaims by March 2, 2004.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.