RAMBUS, INC., Plaintiff,

v.

INFINEON TECHNOLOGIES AG, et al., Defendants.

No. CIV.A. 3:00CV54.

United States District Court, E.D. Virginia, Richmond Division.

June 2, 2004.

Michael W. Smith, Esquire, Craig T. Merritt, Esquire, R. Braxton Hill, Esquire, Christian & Barton, L.L.P., Richmond, VA, Gregory P. Stone, Esquire, Peter A. Detre, Esquire, Munger, Tolles & Olson LLP, Los Angeles, CA, for Plaintiff.

Brian C. Riopelle, Esquire, Robert M. Tyler, Esquire, McGuire Woods, LLP, Richmond, VA, John M. Desmarais, Esquire, Gregory S. Arovas, Esquire, Michael P. Stadnick, Esquire, Kirkland & Ellis, New York, NY, for Defendants.

## MEMORANDUM OPINION

PAYNE, District Judge.

This matter is before the Court on Infineon's [1] Motion *In Limine* to Exclude the

---

1. "Infineon" is the short form for the Defendants: Infineon Technologies AG, Infineon Tech-

FTC ALJ's Initial Decision (Docket No. 565). Infineon first argues that the Initial Decision constitutes hearsay without an exception. Fed.R.Evid. 802. Alternatively, Infineon posits that, even if the Initial Decision is admissible, its probative value is outweighed by its prejudicial effects. Fed.R.Evid. 403. For the reasons set forth below, the motion *in limine* will be granted.

## STATEMENT OF FACTS[2]

On June 18, 2002, the Federal Trade Commission ("FTC" or the "Commission") filed an administrative complaint against Rambus, Inc. ("Rambus") alleging monopolization, attempted monopolization, and unfair competition, all in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a). FTC Complaint, FTC Doc. No. 9302, *In the Matter of Rambus, Inc.* (hereinafter the "FTC Complaint").[3] The FTC Complaint pertained to Rambus' participation in the market for Dynamic Random Access Memory ("DRAM") technologies.[4] The FTC Complaint alleged a:

pattern of anticompetitive acts and practices, undertaken by Rambus over the course of the past decade, and continuing even today, whereby Rambus, through deliberate and intentional means has illegally monopolized, attempted to monopolize, or otherwise engaged in unfair methods of competition in certain markets relating to technological features necessary for the design and manufacture of a common form

of digital computer memory, known as ... DRAM.

FTC Complaint, ¶ 1.

Beginning on April 30, 2003, an Administrative Law Judge ("ALJ") presided over a fifty-four day administrative proceeding concerning these allegations. During the course of that proceeding, forty-four witnesses testified and the ALJ admitted over 1,770 exhibits. Closing arguments were made and the record was closed on October 9, 2003. Thereafter, on February 17, 2004, pursuant to 16 C.F.R. § 3.51, the ALJ issued an "Initial Decision," recommending dismissal of the FTC Complaint because, in the view of the ALJ, the FTC Complaint Counsel had failed to sustain the burden of proof with respect to any of the three alleged violations.[5]

Infineon asserts that, since the issuance of the ALJ's Initial Decision in February, several of Rambus' expert witnesses have made reference to the Initial Decision in their recent reports. Moreover, Rambus has mentioned the Initial Decision repeatedly in recent filings and during recent hearings. Consequently, Infineon asserts that it fears that Rambus may attempt to make the Initial Decision a "central focus of its trial presentation." Def. Memo. in Support, March 15, 2004, at 4. Therefore, Infineon has moved to exclude the admission, or any mention or use, of the Initial Decision at trial.

---

nologies North America Corporation, and Infineon Technologies Holding North America, Inc.

**2.** The underlying facts of this litigation, as well as the posture of the case following a 2001 trial in this Court, an appeal to the United States Court of Appeals for the Federal Circuit, *Rambus, Inc. v. Infineon Tech. AG*, 318 F.3d 1081 (Fed.Cir.2003), and a remand to this Court, have been set forth sufficiently in prior recent opinions of the Court. *See, e.g., Rambus, Inc. v. Infineon Tech. AG*, 220 F.R.D. 264 (E.D.Va. 2004); *Rambus, Inc. v. Infineon Tech. AG*, 304 F.Supp.2d 812 (E.D.Va.2004). Thus, in the interest of brevity, that background will not be repeated here.

**3.** The Federal Trade Commission's Complaint is available at http://www.ftc.gov/os/adj-pro/d9302/02061admincmp.pdf.

**4.** In particular, the FTC Complaint concerned the Synchronous Dynamic Random Access Memory ("SDRAM") and Double Data Rate–Synchro-

nous Dynamic Random Access Memory ("DDR–SDRAM") technologies. These technologies are described in some detail at *Rambus, Inc. v. Infineon Tech. AG*, 164 F.Supp.2d 743, 747–48 (E.D.Va.2001).

**5.** On March 1, 2004, the Commission's Complaint Counsel, pursuant to 16 C.F.R. § 3.52(a), issued a Notice of Appeal, *see* http://www.ftc.gov/os/adjpro/d9302/040301noti-ceofapeal.pdf, stating that it will appeal the entirety of the Initial Decision with the exception of the portions of the decision relating to commerce, the relevant market, and monopoly power. As a result of this appeal, the Commission will receive briefs, hold oral arguments, and thereafter issue a "Final Decision." *See* 16 C.F.R. § 3.54(b). Moreover, although the full Commission's decision is termed a "Final Decision," it is in fact subject to review by the federal courts. *See* 15 U.S.C. § 45(c).

## DISCUSSION

Infineon contends that the ALJ's decision constitutes inadmissible hearsay. In the alternative, Infineon, pursuant to Fed.R.Evid. 403, argues that, even if the Initial Decision is in fact admissible, its probative value is outweighed by its prejudicial effects. Furthermore, relying on Fed.R.Evid. 703, Infineon argues that Rambus cannot use the testimony of its expert witnesses to introduce "through the back door" the fact or substance of the Initial Decision. Def. Memo. in Support, March 15, 2004, at 11.

■ Rambus, for its part, contends that the Initial Decision, although hearsay, is admissible as a public report under Fed.R.Evid. 803(8)(C). And, Rambus asserts that exclusion of the Initial Decision under Fed.R.Evid. 403 is inappropriate. These arguments are addressed in turn.[6]

## I. The Initial Decision is not Admissible

Under the Federal Rules of Evidence, hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Moreover, unless an applicable exception exists, hearsay is inadmissible at tri-

al. Fed.R.Evid. 802. The parties do not dispute that the Initial Decision, which is an out-of-court statement that Rambus would offer to prove the truth of the matters contained therein, constitutes hearsay.

■ Rambus, however, contends that the "public records and reports" exception to the hearsay rule serves to render the Initial Decision admissible. In pertinent part, the public records and reports exception deems admissible:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed.R.Evid. 803(8)(C); *see generally Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 169–70, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988); *Carter v. Burch,* 34 F.3d 257, 265 (4th Cir. 1994); *Major v. CSX Transp.,* 278 F.Supp.2d 597, 605 (D.Md.2003).[7] Rule 803(8)(C) is grounded on the assumption "that a public official will perform his duty properly." *Zeus Enters., Inc. v. Alphin Aircraft, Inc.,* 190 F.3d 238, 241 (4th Cir.1999) (citing *Ellis*

6. Infineon was not a party to the FTC administrative action. Infineon, therefore, correctly notes that, under the law of collateral estoppel, the Initial Decision has no preclusive effect against it in the proceedings in this Court. *See Baker by Thomas v. Gen. Motors Corp.,* 522 U.S. 222, 237 n. 11, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) ("In no event ... can issue preclusion be invoked against one who did not participate in the prior adjudication."); *see also Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). With this premise in place, Infineon goes on to argue that, because the Initial Decision has no preclusive effect, the Initial Decision is irrelevant under Fed.R.Evid. 401 and thus inadmissible under Fed.R.Evid. 402. As argued by Rambus, however, the admissibility question here at issue is governed not by the principle of collateral estoppel—which deals with the question of whether findings from another adjudicative proceeding may bind a party to a different proceeding—but rather by the Federal Rules of Evidence. *Cf. Henry v. Daytop Village, Inc.,* 42 F.3d 89, 96 (2nd Cir.1994). For this reason, Infineon's alternate argument premised on irrelevance occasioned by a lack of issue preclusion is rejected. In addition, due to the clear differ-

ences between the status of the FTC proceedings involving Rambus now and in 2001, the Court rejects Infineon's invitation to bind Rambus to the position it took during the first trial in this Court respecting the then incipient FTC investigation. *See* Pls. Motion *in Limine* to Exclude Evidence Regarding Non–Public FTC Investigation, Feb. 15, 2001.

7. This is an action arising under the federal patent laws; thus, the decisional law of the United States Court of Appeals for the Federal Circuit, rather than that of the United States Court of Appeals for the Fourth Circuit, is controlling as respects any issues of patent law. *Silicon Image, Inc. v. Genesis Microchip, Inc.,* 271 F.Supp.2d 840, 849 (E.D.Va.2003). Of course, in deciding matters that are unrelated to patent issues, the Federal Circuit adjudicates in accordance with the applicable regional circuit law. *Wang Labs., Inc. v. Applied Computer Sci., Inc.,* 958 F.2d 355, 357 (Fed.Cir.1992). Questions pertaining to the admission of evidence are not peculiar to patent law; therefore, Fourth Circuit precedent is controlling as to this motion *in limine. Id.; see also Silicon Image, Inc.,* 271 F.Supp.2d at 849.

*v. Int'l Playtex, Inc.,* 745 F.2d 292, 300 (4th Cir.1984)).

■ In this circuit, the admissibility of a public record as defined under Fed.R.Evid. 803(8) is "assumed as a matter of course," unless there are sufficient negative factors to "indicate a lack of trustworthiness." *Zeus,* 190 F.3d at 241; *accord Dresser v. Ohio Hempery, Inc.,* No. Civ. A. 98–2425, 1999 WL 1063067, *2 (E.D.La. Nov.22, 1999). And, citing to *Zeus,* Rambus posits that the Initial Decision constitutes a public record or report under Fed.R.Evid. 803(8).

In *Zeus,* the plaintiff, Zeus Enterprises, Inc. ("ZEI"), sued Alphin Aircraft, Inc. ("Alphin") for breach of a contract. *Zeus,* 190 F.3d at 240. Under that contract, ZEI engaged Alphin to restore ZEI's airplane to "airworthy" condition. After Alphin had completed the repairs and returned the craft to ZEI, the Federal Aviation Commission ("FAA") issued an emergency order suspending the FAA's certificate of airworthiness for ZEI's airplane, thereby grounding it.

ZEI appealed the emergency suspension order to the National Transportation Safety Board ("NTSB"), *see* 49 U.S.C. § 44709(d); 49 C.F.R. § 821.53; the NTSB, in turn, assigned the case to an ALJ who conducted an evidentiary hearing that lasted twelve days. *See generally* 49 C.F.R. § 821.56. The ALJ permitted Alphin to intervene in this proceeding for the purpose of explaining and defending its repair work. At the conclusion of this hearing, the ALJ issued a decision upholding the FAA's emergency suspension order. *Zeus,* 190 F.3d at 240.[8]

Thereafter, ZEI instituted a breach of contract suit against Alphin. At the trial, ZEI moved to introduce the decision of the ALJ and, relying on Fed.R.Evid. 803(8)(C), the district court admitted the ALJ's decision. A jury thereafter returned a verdict in ZEI's favor. Alphin appealed to the Fourth Circuit, arguing, *inter alia,* that the district court's decision to introduce the ALJ's decision was error. 190 F.3d at 240.

The pertinent portion of the public records and reports exception to the hearsay rule only applies to "factual findings [of a public office or agency] *resulting from an investigation.*" Fed.R.Evid. 803(8)(C) (emphasis added). Alphin, therefore, argued, on appeal, that the ALJ's decision was the product of a quasi-judicial, rather than investigatory, proceeding, wherein the ALJ's role was that of a judge rather than that of an executive branch investigator. And, relying on *Nipper v. Snipes,* 7 F.3d 415 (4th Cir.1993), Alphin asserted that the factual findings of a court constitute hearsay not rendered admissible by Fed.R.Evid. 803(8)(C).

In rejecting Alphin's argument, the Fourth Circuit recognized that, in *Nipper,* it had held that a " 'judge in a civil trial is not an investigator, [but] rather a judge.' " *Zeus,* 190 F.3d at 242 (quoting *Nipper,* 7 F.3d at 417), and that, in *Nipper,* it had held that findings of fact made by a judge do not constitute " 'factual findings resulting from an investigation.' " *Nipper,* 7 F.3d at 417 (quoting Fed.R.Evid. 803(8)). In *Zeus,* however, the Fourth Circuit went on to explain that, in deciding *Nipper,* it had been careful to distinguish between the findings made by judges in the judicial branch from those made by individuals working in the executive branch. 190 F.3d at 242 (discussing *Nipper,* 7 F.3d at 417). Moreover, citing to the Federal Rules Advisory Committee's statements accompanying Fed.R.Evid. 803(8), the Court of Appeals in *Zeus* observed that, in presenting the rule, the Federal Rules Advisory Committee focused on the admissibility of findings of officials within the executive branch, but made no mention whatsoever of findings made by a court. Accordingly, in *Zeus,* the Fourth Circuit concluded that, because of the differing functions of judges and executive branch officers, as well as the differences between judicial and executive-branch proceedings, the decisions of ALJs constitute public records and reports of the type potentially rendered admissible by Fed. R.Evid. 803(8)(C). *Zeus,* 190 F.3d at 243; *accord Henry v. Daytop Village, Inc.,* 42 F.3d 89, 96 (2nd Cir.1994) (dicta); *In re*

---

**8.** Alphin appealed the ALJ's decision to the NTSB; the NTSB, however, dismissed the appeal for lack of standing.

*Paducah Towing Co.,* 692 F.2d 412, 420 (6th Cir.1982); *Warren v. Quality Care Serv. Corp.,* 603 F.Supp. 1174, 1181 n. 8 (W.D.N.Y. 1985).

■ Contrary to the position advanced by Rambus, however, *Zeus* does not stand for the blanket proposition that all ALJ decisions are admissible under Fed.R.Evid. 803(8)(C). Rather, in determining whether the decision of an ALJ is admissible under Fed.R.Evid. 803(8)(C), a court must examine the specific function of the ALJ who issued the decision, as well as the nature of the executive branch proceeding which is at issue. *Zeus,* 190 F.3d at 241–42. Only if the executive branch proceeding was investigatory, as opposed to judicial in nature and only if the ALJ in that proceeding was acting in an executive—as opposed to judicial function—does the exception codified at Fed. R.Evid. 803(8)(C) apply. *Id.* Thus, in determining the admissibility of the ALJ's decision, the Fourth Circuit, in *Zeus,* examined what had transpired in the NTSB proceeding to determine the nature of the proceedings, as well as the ALJ's role therein.

In the NTSB proceeding at issue in *Zeus,* each party had the opportunity to present its case by oral and documentary evidence, to submit evidence in rebuttal, and to conduct such cross-examination as was required for a full and true disclosure of the facts. 49 C.F.R. § 821.38. Moreover, before the hearing, the parties were permitted to engage in discovery. 49 C.F.R. § 821.55. During the hearing, the ALJ conducted an extensive factual inquiry into the airworthiness of ZEI's airplane. The ALJ heard and considered testimony from FAA inspectors and several scientific and engineering experts. The ALJ also examined the airplane's maintenance records and reviewed the results of metallurgical and engineering tests conducted on the plane. *Zeus,* 190 F.3d at 241. Before issuing the decision, the ALJ afforded the parties an opportunity to present arguments in support of, or in opposition to, proposed rulings, and to submit for consideration pro-

posed findings and conclusions and supporting reasons therefor. 49 C.F.R. § 821.39.

A comparison of the rules governing the NTSB administrative action at issue in *Zeus* and the FTC proceeding at issue here reveals much similarity in process. For instance, as is true in NTSB actions under 49 C.F.R. § 821.38, parties to an action in the FTC have the right of due notice, cross-examination, presentation of evidence, and all other rights essential to a fair outcome. 16 C.F.R. § 3.41. In both FTC and NTSB actions, the parties have a right to use all the familiar tools of discovery. *Compare* 16 C.F.R. § 3.31(a), *with* 49 C.F.R. § 821.55(d). As is true in an NTSB action, *see* 49 C.F.R. § 821.39, the parties in an FTC action are afforded an opportunity to present arguments in support of, or in opposition to, proposed rulings. 16 C.F.R. § 3.46. Similarly, in both instances parties are afforded a reasonable opportunity to submit for consideration proposed findings and conclusions and supporting reasons therefor. *Compare* 16 C.F.R. § 3.46(a), *with* 49 C.F.R. § 821.39.

Likewise, the powers of an ALJ in an emergency NTSB administrative proceeding are virtually identical to those of an ALJ in the type of FTC action here at issue. *Compare* 49 C.F.R. § 821.35(b), *with* 16 C.F.R. § 3.42(c). In both instances, the ALJs have the power, *inter alia,* to hold conferences for the purpose of settlement or simplification of issues, to issue subpoenas, to rule on motions, to regulate the conduct of hearings, to administer oaths and affirmations, to examine witnesses, to take depositions and to cause depositions to be taken, and to receive evidence and rule upon objections and offers of proof.

This similarity between the nature of the NTSB proceedings at issue in *Zeus* and the FTC proceeding at issue in this case, as well as the similar powers and functions of ALJs presiding over NTSB and FTC administrative actions, suggest that, under the rule of *Zeus,* the Initial Decision qualifies as a report "resulting from an investigation made pursuant to authority granted by law" within the meaning of Rule 803(8)(C).[9] The circum-

**9.** That is so notwithstanding that, in the Initial Decision, the FTC ALJ often refers to itself as "the Court" and has structured the Initial Deci-

sion to look (and read) much like an opinion issued by a judge in the judicial branch.

stances presented here, however, are significantly different than those presented in *Zeus*, and those differences counsel a different result for several reasons.

First, the ALJ's decision in *Zeus* was a final one. Although Alphin appealed the decision to the full NTSB, the appeal was dismissed before the subsequent civil case, thereby rendering the ALJ's decision final. *Zeus*, 190 F.3d at 240. In contrast, the Initial Decision from the FTC proceedings is currently being reviewed by the full Commission; and, under the FTC's rules, on appeal, the full Commission may "adopt, modify, or set aside the findings, conclusions, and the rule or order contained in the initial decision." 16 C.F.R. § 3.54(b). Thus, the Initial Decision is not, under the FTC's own rules, a final determination of the FTC's findings. Consequently, considering the nature of the executive branch proceeding (as instructed by *Zeus*), it appears that the lack of finality and the presence of an ongoing appeal foreclose a determination that the Initial Decision constitutes an agency's "factual finding." And, under Fed.R.Evid. 803(8)(C), only an FTC factual finding would be admissible.[10] *See Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1140 (5th Cir.1983) ("If the document is not sufficiently final, it may not constitute a 'factual finding' ... under the exception to the hearsay rule in Fed.R.Evid. 803(8)(C)."); *see also United Air Lines, Inc. v. Austin Travel Corp.*, 867 F.2d 737, 743 (2nd Cir. 1989) ("Considering as well the interim or inconclusive nature of the reports ... the court was entirely within its discretion when it refused to consider them."); *Gentile v. County of Suffolk*, 129 F.R.D. 435, 458 (E.D.N.Y.1990) (stating that "finality is a consideration favoring admission" under Fed. R.Evid. 803(8)(C) and admitting report because it was final). *Cf. Brown v. Sierra Nevada Mem'l Miners Hosp.*, 849 F.2d 1186, 1189 (9th Cir.1988); *Strobl v. N.Y. Mercan-*

*tile Exch.*, 590 F.Supp. 875, 879–80 (S.D.N.Y. 1984).

Second, the fact that the Initial Report is subject to *de novo* review and thus is preliminary in nature also casts doubt upon its "trustworthiness" under Fed.R.Evid. 803(8)(C). *See Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1140 (5th Cir.1983) (noting that if administrative report is not final, it *"may be considered untrustworthy"* under 803(8)(C)(emphasis added)); *see also Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1342 n. 4 (3rd Cir.2002) (stating that, in determining trustworthiness under Fed. R.Evid. 803(8)(C), courts may consider, *inter alia*, " '[t]he finality of the agency findings, *i.e.*, the state of the proceedings at which the findings were made (whether they are subject to subsequent proceedings or *de novo* review), and the likelihood of modification or reversal' ") (quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F.Supp. 1125, 1147 (E.D.Pa.1980)); *Barlow v. Conn.*, 319 F.Supp.2d 250, 258 (D.Conn.2004) (excluding report because of its preliminary nature).

Third, the "trustworthiness" of the Initial Decision is significantly undercut by the absence from the FTC proceedings of the party against whom the ALJ's report is sought to be here admitted. In *Zeus*, for example, Alphin, the party against whom the ALJ's report was admitted in the subsequent federal court action, had been "permitted to intervene in [the NTSB] proceeding for the purpose of explaining and defending ... its repair work." 190 F.3d at 240. In contrast, Infineon was not a party to the FTC proceeding and had no ability to participate in it; that fact militates against a finding that the Initial Decision is "trustworthy" as Fed. R.Evid. 803(8)(C) uses that term. *See Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1342 n. 4 (3rd Cir.2002).[11] Indeed, in the two

---

**10.** Rambus has cited, and the Court's independent research has disclosed, no decision in which a preliminary administrative report, then undergoing a *de novo* review, has been admitted, over objection, under Rule 803(8)(C).

**11.** The Court notes that, as the party challenging admissibility, Infineon bears the burden of showing a lack of trustworthiness. *Zeus*, 190 F.3d at

241. In determining the "trustworthiness" of a public record or report, the Federal Rules Advisory Committee has instructed the courts to utilize the following factors:

(1) the timeliness of the investigation; (2) the special skill or experience of the investigators; (3) whether the agency held a hearing; and (4) possible motivational problems.

cases located by the Court wherein courts admitted FTC findings in subsequent civil actions under Fed.R.Evid. 803(8)(C), the parties against whom the FTC findings were admitted had been parties to the earlier FTC actions. *See King v. Horizon Corp.*, 701 F.2d 1313, 1315–16 (10th Cir.1983); *In re Plywood Antitrust Litig.*, 655 F.2d 627, 637 (5th Cir.1981).[12]

Fourth, in resolving the issue of trustworthiness under Fed.R.Evid. 803(8)(C), the Court should consider the underlying information that led to the ALJ's findings and conclusions. *Coleman*, 306 F.3d at 1342. In this case, however, that consideration would be significantly incomplete because portions of the FTC proceeding were conducted under seal. Indeed, the ALJ received a not insignificant portion of the evidence in that action *in camera*. Thus, the Court is unable to ascertain whether the Initial Decision is based on information and evidence that is trustworthy.

██ Similarly, the extent to which executive agency findings are based upon, or are the *product of*, proceedings involving the receipt of materials which would not be admissible as evidence in the courts, *i.e.*, ex parte evidence, is a factor under the Fed.R.Evid. 803(8)(C) trustworthiness inquiry. *Coleman*, 306 F.3d at 1342 n. 4. In this case, the fact that the ALJ based the Initial Decision, at least in part, on materials received ex parte tends towards a finding of untrustworthiness.

On a related point, the public version of the Initial Decision, which is the only version to which both Infineon and the Court have access, contains redacted portions. This fact further inhibits a meaningful assessment of the trustworthiness of the Initial Decision. *Coleman*, 306 F.3d at 1342 n. 4 (stating that, in determining trustworthiness under Rule 803(8)(C), courts should consider, *inter alia,*

"[t]he extent to which there is an ascertainable record on which the findings are based") (internal citations and quotations omitted).

In sum, Rule 803(8)(C) does not serve to render the Initial Decision admissible. In light of the nonfinal and appealable nature of the Initial Decision, the Initial Decision is not the type of document subject to admission under Rule 803(8)(C). Moreover, even if the Initial Decision is a "factual finding" of the type generally admissible under Rule 803(8)(C), the Court finds that the Initial Decision lacks the indicia of trustworthiness necessary for its admission under Rule 803(8)(C).

## II. The Initial Decision is Excluded Under Fed.R.Evid. 403

██ Even if the Initial Decision were admissible under Rule 803(8)(C), it would need to be excluded under Fed.R.Evid. 403. The applicable analysis begins with the recognition that the Federal Rules of Evidence do not make relevance the sole criterion of admissibility; rather, even relevant evidence must be excluded if its probative value is substantially outweighed by the prejudicial effect that its admission may cause. Fed. R.Evid. 403. In other words, although relevant evidence is, as a general proposition, admissible, if the prejudicial effect that would result from the introduction of a relevant piece of evidence substantially exceeds the gains that would ensue, it should be excluded. *Westfield Ins. Co. v. Harris*, 134 F.3d 608, 614 (4th Cir.1998).

Rule 403 provides in full that:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by the considerations of undue

---

*Bank of Lexington v. Vining–Sparks Securities,* 959 F.2d 606, 616 (6th Cir.1992) (citing Advisory Committee notes to Fed.R.Evid. 803(8)). In that list, the absence of the party against whom a report is offered fits into the fourth factor. Moreover, that list of factors is not exclusive; rather, any circumstances which may affect trustworthiness should be considered when determining the admissibility of public records and reports under Fed.R.Evid. 803(8)(C). *In re Paducah Towing Co.*, 692 F.2d 412, 420 (6th Cir.

1982); *see also Coleman v. Home Depot, Inc.,* 306 F.3d 1333, 1342 n. 4 (3rd Cir.2002) (setting forth additional factors to consider under trustworthiness inquiry).

12. As discussed below in Section II, the fact that Infineon did not participate in the FTC proceeding is also relevant under the Fed.R.Evid. 403 analysis.

delay, waste of time, or needless presentation of cumulative evidence.

In this case, even though the Initial Report is relevant to several issues in this litigation,[13] it must be excluded under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice and its tendency to mislead the jury, confuse the issues, and waste time. *See City of N.Y. v. Pullman, Inc.*, 662 F.2d 910, 915 (2nd Cir.1981) ("Even if the report was admissible [under Fed.R.Evid. 803(8)(C)] . . . the district court did not abuse its discretion in holding, in the alternative, that the report should be excluded under Fed.R.Evid. 403 because the likelihood that it would confuse the jury and protract the proceedings outweighed its probative value.").

First, the jury, when confronted with the Initial Decision, likely would give undue weight to the findings of the ALJ. *See Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1358 (4th Cir.1995) (upholding trial court's decision under Fed.R.Evid. 403 to exclude report of state agency because "jury would have placed undue weight on such evidence") (internal citations and quotations omitted); *accord Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir.1997) ("A strong argument can made that a jury would attach undue weight to this . . . agency determination."). Similarly, the jurors' ability to reach their own determinations respecting the facts at issue in this case would be undermined by the admission of the Initial Decision. *United States v. MacDonald*, 688 F.2d 224, 230 (4th Cir.1982) (upholding trial court's decision under Fed.R.Evid. 403 to exclude executive branch investigator's findings and conclusions because report "tend[ed] to undermine the exclusive province of the jury"); *see also* Steven P. Grossman & Stephen J. Shapiro, *The Admission of Government Fact Findings Under Federal Rule of Evidence 803(8)(C): Limiting the Dangers of Unreliable Hearsay*, 38 U. Kan. L.Rev. 767, 778–779 (1990) ("Jurors learning that a presumably

objective public official has reached a certain conclusion after hearing evidence similar to what they have heard may have difficulty reaching an opposite conclusion. Further, the jury is likely to deliberate on the correctness of the previous fact finding, rather than retaining the open-minded, first impression approach to the issues our system prefers.").

The contrary result reached in *Zeus* is not applicable here. In *Zeus*, the Fourth Circuit rejected Alphin's argument that the jury gave the ALJ's decision too much weight because, at trial, Alphin had been allowed to introduce evidence to contradict the ALJ's findings and the jury had been instructed that the ALJ's report was not dispositive in the civil case. Here, Infineon has been foreclosed not only from the complete text of the ALJ's report (the public version being redacted), but also has not even had access to all of the evidence underlying the Initial Decision because much of it was admitted, and discussed, *in camera*. Under those circumstances, it is unrealistic to expect that Infineon could show a jury how the ALJ's report was in error. In other words, lacking access to the underlying information, Infineon would be hard-pressed to demonstrate to the jury that it should reject the Initial Decision.

In addition, the admission of the Initial Decision would create confusion of the issues and would create a serious risk of misleading the jury. For instance, the jury here will be required to decide Infineon's monopolization counterclaim.[14] To prove its claim, Infineon will be permitted to introduce evidence of its own that addresses the element of that claim as it is structured under the facts developed here. Although it does discuss Rambus' alleged monopolization, much of the Initial Decision involves issues not presented by Infineon's claim. Yet, if the Initial Decision were admitted here, Infineon would be required to address issues not presented by its claim or its evidence. And, following that presentation, it would be necessary to tell the jury that Infineon's evidence on those issues

---

13. For instance, the Initial Decision is relevant to several of Infineon's counterclaims and affirmative defenses; notably, Infineon's counterclaim for monopolization under 15 U.S.C. § 2, as well as its allegations of unfair competition under Cal. Bus. & Prof.Code § 17200.

14. This result, of course, will not obtain if Infineon's monopolization counterclaim is dismissed on summary judgment, in which event the Initial Decision would be irrelevant on that point.

is admissible only to prove that the Initial Decision is unreliable, not to prove Infineon's substantive claims.

One can hardly envision a more confusing and misleading scenario. Nor can one conjure a more wasteful exercise. The evidence in a straight-forward monopolization claim is certainly not simple, and the instructions, even without introduction of the Initial Decision, will be quite complex. It would be utterly wasteful, even if manageable at all, to overlay that evidence and those instructions with, as Infineon correctly asserts, a series of mini-trials respecting the reliability of the findings in the Initial Decision.

Nor is it possible, as Rambus vaguely posits, to extract specific findings from the Initial Decision and tender them to the jury. To begin, the factors that precipitated the "untrust-worthiness" findings in the Rule 803(8)(C) analysis simply foreclose such an approach. Moreover, it is difficult to imagine parsing the Initial Decision for admissible sections without creating a convoluted and disjointed end-product. And, in the process of such parsing and extraction, due process of law would be undermined because Infineon would have had no access to much of the evidence and no chance to have been heard at all on issues as to which Rambus would urge are disposed of by the Initial Decision. The Court will not countenance the prejudice to the fair adjudication of this action that admission of the Initial Decision undoubtedly would present.[15]

For the forgoing reasons, the Court finds that the probative value of admitting the Initial Decision is substantially outweighed by its prejudicial effects and its tendency to mislead the jury, confuse the issues, and waste time. Thus, without regard to its admissibility under Rule 803(8)(C), the Initial Decision will be excluded under Fed.R.Evid. 403.

## III. Rambus' Expert Witnesses may not Testify Respecting the Initial Decision

 Finally, relying on Fed.R.Evid. 703, Infineon argues that Rambus cannot use the testimony of its expert witnesses to introduce, through the back door, the fact or substance of the Initial Decision. Infineon, therefore, moves the Court to preclude Rambus' experts, particularly Dr. Richard T. Rapp ("Dr.Rapp") and Dr. David J. Teece, from referencing in any way in front of the jury the Initial Decision.

 According to the Federal Rules of Evidence:

> Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed.R.Evid. 703. Thus, although an expert may rely on inadmissible materials in reaching his conclusion, Rule 703 "provides a presumption against disclosure to the jury of [inadmissible] information used as the basis for an expert's opinion ... when that information is offered by the proponent of the expert." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 703.05 (2d ed.2003). Thus, only when the prejudice occasioned by the introduction of the inadmissible underlying data would be substantially outweighed by the probative ability of the data to assist the jury in evaluating the expert's testimony, should such data be admitted. *Id.*[16]

In this case, the probative value of the Initial Decision in assisting the jury to evalu-

---

15. No doubt Infineon, as an appropriate step to rebut Rambus' introduction of the Initial Decision, would further seek to inform the jury of the FTC's appeals process. The Court, however, has no interest in overwhelming and sidetracking the jury—which will already be grappling with the complex patent and antitrust issues involved in this case—with a collateral inquiry into the FTC administrative process and the FTC's internal rules.

16. Furthermore, if the trial court determines that the underlying data should be disclosed to the jury, the disclosure can only be for the limited purpose of assisting the jury in its evaluation of the expert; the underlying data or information should not be used for any substantive purpose. 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 703.05 (2d ed.2003).

ate Rambus' experts' opinions would not substantially outweigh the prejudicial effect that the introduction of the Initial Decision would engender. As recounted above in Section II, admission of the Initial Decision would cause significant prejudice to Infineon. The Court finds that any value the Initial Decision may have in assisting the jury adequately to evaluate the expert witness testimony offered by Rambus is offset by this significant prejudice. *See Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1062 (9th Cir.2003). Rambus' experts, therefore, will not be permitted to make reference to the Initial Decision at trial, either on direct or cross-examination.[17]

Counsel are admonished to inform their witnesses, expert and fact, of this decision. In view of the serious adverse effects on this case of any violation of this decision, counsel shall further inform their witnesses that any mention of the Initial Decision by any witness will result in the imposition of sanctions which may include a citation for contempt of court (including exposure to sanctions ancillary to such a finding), as well as the striking of the testimony of the offending witness, or entry of default judgment against the party whose witness violates the rule.

### CONCLUSION

For the foregoing reasons, Infineon's Motion *in Limine* to Exclude the FTC ALJ's Initial Decision (Docket No. 565) is hereby granted.

The facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

---

**17.** Considering that the question is the subject of a separate motion *in limine, see* Def. Mot. *in Limine* to Strike Sections One and Two of the Suppl. Expert Report of Dr. Richard T. Rapp, March 15, 2004, the Court will evaluate later the issue whether, in preparing his supplemental report, Dr. Rapp's reliance on the Initial Decision and the evidence received in the FTC hearing was proper.