495 S.E.2d 782

**RADALYTIC LABS, INC., Radon, Inc., Parker Wright and Brickford Faucette, Respondents,**

v.

**David A. CULVER and Janice L. Culver, Petitioners.**

No. 24756.

Supreme Court of South Carolina.

Heard Dec. 16, 1997.

Decided Jan. 26, 1998.

---

Ivan N. Walters and Douglas F. Gay, of Gay & Walters, Rock Hill, for petitioners.

Beverly A. Carroll, of Kennedy, Covington, Lobdell and Hickman, L.L.P., Rock Hill, for respondents.

WALLER, Justice:

We granted certiorari to consider the Court of Appeals' opinion in *Radalytic Labs, Inc. et al. v. Culver*, 96–UP–194 (S.C.Ct.App. filed July 9, 1996). We reverse.

## *FACTS/PROCEDURAL POSTURE*

David and Janice Culver ("Sellers") owned one hundred percent of the common stock in Radalytic Labs, Inc. (David owning sixty per cent and Janice owning forty per cent). On June 2, 1989, they entered into an agreement to sell eighty percent of the stock (David and Janice each selling forty per cent) to Radon, Inc. ("Purchaser"). The total purchase price was $190,000. Purchaser agreed to make a cash down payment of $25,000, and to execute a promissory note for the remaining balance of $165,000, such note to be repaid according to the terms of the agreement. Purchaser also agreed to place its newly-purchased shares in escrow as security for full payment. A separate "Pledge and Escrow Agreement" was

executed by the parties. Finally, David was to continue working for Radalytic Labs, Inc. as a corporate officer for five years under terms as set forth in the agreement.

On February 18, 1993, David's employment was terminated. Radalytic Labs, Inc. and Purchaser subsequently filed suit against Sellers alleging, *inter alia,* misappropriation of corporate assets and breach of contract. Sellers counterclaimed alleging breach of contract on several grounds, the one pertinent here being default under the purchase agreement in that the required note payments had not been made.[1] The case was referred to a master-in-equity with direct appeal to this Court.

At the hearing, Purchaser and Radalytic Labs, Inc. represented they were no longer pursuing their claims against Sellers; thus the trial issues concerned only Sellers' counterclaims and third-party claims. Specifically, both sides requested the master to rule on "whether or not the tendering of all the stock of Radalytic Labs, Inc. to [Sellers] would satisfy any debt owing from the Plaintiffs and the third-party defendants to [Sellers] in full." The master ruled the tender of stock so satisfied Purchaser's obligations and ordered the conveyance of stock to Sellers. The Court of Appeals affirmed in an unpublished opinion. *Radalytic Labs, Inc. et al. v. Culver,* 96–UP–194 (S.C.Ct.App. filed July 9, 1996).

This Court granted certiorari to consider this aspect of the master's ruling.[2]

## DISCUSSION

█ The focal point of contention centers around the following language in the Pledge and Escrow Agreement concerning the rights of the parties upon default:

---

**1.** Sellers also asserted a third-party claim against Parker Wright and Brickford Faucette, Purchaser's owners, seeking to hold them individually liable.

**2.** We declined to review the Court of Appeals' reversal of the master's ruling Sellers were barred from recovery because they had unclean hands. *See Culver,* 96–UP–194, at 3.

Upon a default or failure to perform by [Purchaser] of its obligations under the note or the contract referred to above, [Sellers] shall give written notice of such default to [Purchaser] and to Escrow Agent.  Unless within ten (10) days following the date of such notice [Purchaser] provides satisfactory evidence to Escrow Agent that the default or failure to perform has been satisfactorily cured, Escrow Agent is authorized to immediately deliver the attached proxy and all certificates representing pledged shares to [Sellers].  **[Sellers] may then acquire the stock for their own account, which shall satisfy all obligations of [Purchaser] to [Sellers] or sell the pledged stock at a bonafide private sale or otherwise and apply the proceeds of sale, first to the cost of sale and then to payment of any obligations of [Purchaser] to [Sellers], all of which shall be deemed to be accelerated by such event of default.  Following any sale, the surplus, if any, shall be delivered to [Purchaser].**

It is essentially uncontested that this agreement gave Sellers the option, upon default, of either (1) keeping the stock, in which case all obligations of Purchaser would be deemed satisfied, **or** (2) selling the stock.[3]  The determinative issue is whether, should Sellers exercise the second option, they would be entitled to seek a deficiency judgment if the stock were to sell at a loss.[4]  In finding Sellers did not have this right, the Court of Appeals found, "Should [Sellers] sell the stock at a

---

**3.**  In interpreting the contractual language, the master found:

> The Escrow Agreement entered into by the parties, in its plain reading, states that if [Purchaser does] not fulfill its obligation to [Sellers], it may tender the stock in full satisfaction of [its] obligations to [Sellers].  The plain reading of the agreement states that [Sellers] may acquire the stock "which shall satisfy all obligations...."  It is therefore concluded that the tender of stock of Radalytic Labs, Inc. to [Sellers] has been made by [Purchaser] and satisfied the obligations of [Purchaser].

Apparently the master was under the impression it was the Purchaser's choice as to which option Sellers would take.  This was an erroneous interpretation of the agreement.

**4.**  If Sellers cannot seek a deficiency judgment, the master's ruling would, as a practical matter, be correct, at least regarding Sellers' rights.  In other words, if Sellers cannot seek any deficiency, it would not matter whether they exercise option one or two because they could sell it regardless of which option they technically exercised.

private sale, there is no provision in the contract allowing [Sellers] to seek a deficiency judgment against [Purchaser] in the event the stock sells at a loss." *Culver*, 96–UP–194, at 3. The Court of Appeals is correct that there is no contract provision addressing any right to a deficiency judgment. However, Sellers argue they are entitled to seek a deficiency judgment as a matter of law under Title 36 of the South Carolina Code. We agree.

Section 36–9–504(2) states, "If the security interest secures an indebtedness, the secured party shall account to the debtor for any surplus, **and, unless otherwise agreed, the debtor is liable for any deficiency.**" (emphasis supplied). We interpret this language to give a secured party the right to seek a deficiency judgment unless such right is specifically refused by agreement. Because the contract here is silent on this issue, we find Sellers had this statutory right. *See Blakeley v. Rabon*, 266 S.C. 68, 72, 221 S.E.2d 767, 769 (1976) ("Words cannot be read into a contract which impart intent wholly unexpressed when the contract was executed"). Therefore, the Court of Appeals erred in affirming the master's ruling.[5] This case is therefore remanded for any further proceedings consistent with this opinion.

REVERSED AND REMANDED.

FINNEY, C.J., TOAL, MOORE and BURNETT, JJ., concur.

---

**5.** We summarily reject Purchaser's argument Sellers have not preserved this issue because they failed to argue it to the master. The record clearly shows otherwise. Additionally, we find Purchaser's arguments that section 36–9–504 does not apply to the security interest in this case, and that Sellers did not have rights in the collateral as required before a security interest can attach, *see* S.C.Code Ann. § 36–9–203(1)(c) (Supp.1996), to be without merit. Finally, to the extent Purchasers argue Sellers are barred from seeking a deficiency judgment because they did not take adequate care of the collateral, *see* S.C.Code Ann. § 36–9–207 (Supp.1996), we find this argument would be better addressed on remand should Sellers actually seek a deficiency judgment in this case.