Paul **BRAUNSTEIN,** Kevin **Gasser,** James **Iha,** D'arcy **Brown,** Craig **Kanarick,** Katie **Ford,** and Andre **Balazs,** Plaintiffs,

v.

Thomas B. **PICKENS,** III, Defendant.

C.A. No. 2:08–cv–193–PMD.

United States District Court,
D. South Carolina,
Charleston Division.

Jan. 20, 2009.

IT IS FURTHER ORDERED that each party bear their attorney fees and costs of this action.

Andrew Kenneth Epting, Jr., Andrew K. Epting Jr. Law Office, Charleston, SC, for Plaintiffs.

Allen Jackson Barnes, Amy LB Hill, Sowell Gray Stepp and Laffitte, Columbia, SC, for Defendant.

## *ORDER*

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the Court on Plaintiffs' Motion for Summary Judgment, and Defendant's Motion for Judgment on the Pleadings, construed by this court as a Rule 12 Motion for Summary Judgment. Plaintiffs have also filed a Motion to Amend. For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is granted, Defendant's Motion for Judgment on the Pleadings is denied, and Plaintiffs' Motion to Amend is granted.

## *BACKGROUND*

Plaintiffs were all investors who invested various substantial sums of money with Defendant Thomas B. Pickens, III ("Defendant"). Through a sequence of events beyond the scope of the legal issues presented before this Court on the Motions at hand, the investments went bad, and Plaintiffs' money was lost. Plaintiffs filed suit against Defendant and corporations run by

Defendant in Charleston County Court of Common Pleas.

Defendant signed a series of Confessions of Judgment recognizing that Plaintiffs were, in fact, owed a substantial deal of money, and that judgment should be entered against Great Southern Waterworks, Inc., a corporation run by Defendant, in various amounts depending upon the initial amount invested by Plaintiffs totaling $2,886,994.64 plus interest and attorneys' fees. (Pls.' Ex. A.) However, Defendant was unable to pay this amount, and the case was stayed due to pending bankruptcy proceedings.

At this point, the two sides reached a settlement. While the precise details of the settlement agreement have not been disclosed due to a confidentiality clause, Plaintiffs agreed to accept a promissory note from Defendant for the payment of $250,000 plus interest at a rate of 5%. (Pls.' Ex. B.) The promissory note was due to be paid in full by Defendant to Plaintiffs on July 30, 2007.

As part of the settlement, Plaintiffs also entered into a Hypothecation Agreement ("the Agreement") with Defendant.[1] (Pls.' Ex. C.) This Agreement was entered into for the express purpose of securing Defendant's payment of the $250,000 plus interest he had agreed to pay in the promissory note, and provided that in the event that Defendant did not live up to this obligation, Plaintiffs had a security interest in Defendant's shares of stock in the Code Corporation. These shares were to be kept in an escrow account maintained by Defendant's counsel until his debt under the promissory note was discharged. The Agreement further provided:

> In the event of his default on the terms of the Promissory Note ..., Pickens

hereby *authorizes* the Secured Parties to sell any or all of his shares of stock in the Code Corporation. Such sale must be made according to standard commercial practices observed by such businesses in the business [sic] selling securities as is then usually transacted, or at public auction provided thirty days prior written notice is provided to Pickens, and with prior tender, demand and call upon Pickens. *Pickens shall not remain personally liable for any deficiency.*

*Id.* at 2 (emphasis added).

When payment of the $250,000 became due on July 30, 2007, Defendant had still failed to pay the Plaintiffs any of the money he had agreed to pay them. Accordingly, on October 15, Plaintiffs' counsel contacted Defendant's counsel and demanded delivery of all of Defendant's shares of stock in the Code Corporation pursuant to the Agreement. (Def.'s Ex. C.) In response, Defendant's counsel sent Plaintiffs' counsel a letter acknowledging that Defendant had not fulfilled his obligations under the promissory note. Defendant's counsel also enclosed a certificate of stock for all of Defendant's shares of Code Corporation stock, and explained to Plaintiffs that Defendant would not be held liable for any deficiency from the sale. However, the stock certificate was not endorsed or assigned by Defendant.

Plaintiffs now claim that the stock is so devalued as to be essentially worthless. Plaintiffs are asserting that Defendant is still responsible for the amount he promised to pay Plaintiffs in the promissory note. Defendant claims, however, that the Hypothecation Agreement was clear that Plaintiffs were entitled to either get the money from Defendant or exercise their security interest and take the shares of

---

1. Hypothecation is defined as "[t]he pledging of something as security without delivery of title or possession." *Black's Law Dictionary* 747 (7th ed. 1999).

stock, but that once they demanded the stock because Defendant was in default, they forfeited any claim to the $250,000 promissory note amount.

Plaintiffs filed their Complaint with this court on January 21, 2008, to which Defendant filed an Answer on April 10. Defendant filed a Motion for Judgment on the Pleadings on June 17. Also on June 17, Plaintiffs filed a Motion for Summary Judgment and a Motion to Amend, seeking to add information to the Complaint regarding the fact that the shares of stock have little or no value and have not been endorsed. Defendant asserts that to allow this amendment would be unfairly prejudicial, and filed a Response in Opposition on July 7. Defendant also filed a Response in Opposition to Plaintiffs' Motion for Summary Judgment on July 7. Also on July 7, Plaintiffs filed a Response in Opposition to Defendant's Motion for Judgment on the Pleadings.

## STANDARD OF REVIEW

### I. Summary Judgment

To grant either party's motion for summary judgment,[2] the Court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The Court is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995)

**2.** While Defendant's filing is technically a Motion for Judgment on the Pleadings, the standard to be applied by the court in ruling on such a motion is identical to the standard applied in ruling on a Motion to Dismiss according to Rule 12(b)(6). Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Courts have held that the standard to be applied to a Rule 12(c) motion is the same to be applied to a Rule 12(b)(6) motion. *See, e.g., Burbach Broadcasting Co. v. Elkins Radio Corp.,* 278 F.3d 401, 405–06 (4th Cir.2002); *S & S Constr., Inc. of Anderson v. Reliance Ins. Co.,* 42 F.Supp.2d 622, 623 (D.S.C.1998). Furthermore, since "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). *See also Wilson–Cook Med., Inc. v. Wilson,* 942 F.2d 247, 252 (4th Cir.1991) ("Had the district court accepted and considered the affidavits relevant to the 12(b)(6) motion, the motion to dismiss for failure to state a claim would have been converted to a motion for summary judgment."). Since Defendant has submitted materials in the form of several exhibits that it wishes the court to consider in ruling upon its Motion, then the standard applied to Defendant's Motion is identical to the standard to be applied to evaluating Plaintiffs' Motion for Summary Judgment. Accordingly, the court treats these as cross-motions for summary judgment.

(quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut" but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

## II. Motion to Amend

Motions to amend a pleading are governed by Rule 15(a) of the Federal Rules of the Civil Procedure. Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." *See* Fed. R.Civ.P. 15(a). Upholding the letter and the spirit of this rule, "leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir.1999) (emphasis in original); *see also Rambus, Inc. v. Infineon Tech., AG*, 304 F.Supp.2d 812, 819 (E.D.Va.2004) ("Courts generally favor the 'resolution of cases on their merits' ... [t]hus the substantive merits of a proposed claim [or defense] are typically best left for later resolution, e.g., motions to dismiss or for summary judgment, ..., or for resolution at trial.") (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.1980)). A delay in bringing a proposed amendment is generally insufficient reason to deny a party leave to amend. *Edwards*, 178 F.3d at 242.

Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir.1986). An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred. *Laber v. Harvey*, 438 F.3d 404, 426–27 (4th Cir. 2006); *see Davis*, 615 F.2d at 613 ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case.").

## DISCUSSION

### I. Motions for Summary Judgment

Each party claims that it is entitled to judgment as a matter of law under Rule 56. Plaintiffs assert that Defendant was in default on the promissory note, and that, as secured creditors, their remedies were not limited to the security interest, but also included the ability to sue Defendant for any deficiency in the value of the secured interest and the amount owed. Plaintiffs also assert that Defendant failed to validly deliver the stock, since it was not properly signed or endorsed, and thus even if Plaintiffs' remedies were limited to either a sale of the stock or a suit for the amount owed, they are unable to sell the stock and thus should not be limited to that remedy.

For his part, Defendant claims that the terms of the Hypothecation Agreement plainly state that Plaintiffs could either demand the shares of stock to sell or seek the amount owed, but if they demanded the shares of stock, Plaintiffs expressly forfeited any right to seek the amount owed in a lawsuit.

The Hypothecation Agreement states that:

> In the event of his default on the terms of the Promissory Note ..., Pickens hereby authorizes the Secured Parties to

sell any or all of his shares of stock in the Code Corporation. Such sale must be made according to standard commercial practices observed by such businesses in the business [sic] selling securities as is then usually transacted, or at public auction provided thirty days prior written notice is provided to Pickens, and with prior tender, demand and call upon Pickens. *Pickens shall not remain personally liable for any deficiency.* (Def.'s Ex. B) (emphasis added). When Plaintiffs first demanded Defendant's shares of stock, Defendant's attorney sent a reply letter (with the stock certificate enclosed) which stated, "[a]s set forth in the Hypothecation Agreement, Mr. Pickens shall not remain personally liable for any deficiency following the sale." (Def.'s Ex. C.)

Under South Carolina law governing secured interests, "[i]f the security interest secures an indebtedness, the secured party shall account to the debtor for any surplus, and, *unless otherwise agreed,* the debtor is liable for any deficiency." S.C.Code Ann. § 36–9–504(2) (emphasis added). South Carolina courts have interpreted this provision "to give a secured party the right to seek a deficiency judgment unless such right is specifically refused by agreement." *Radalytic Labs, Inc. v. Culver,* 329 S.C. 380, 384, 495 S.E.2d 782, 783 (1998). In other words, the default under the law is that if a security interest is meant to secure a payment of funds and that security interest is of insufficient value, the secured party is entitled to seek a judgment for the deficiency. However, this rule is not mandatory, and the secured party and the debtor may contract around it.

Defendant asserts that this is precisely what occurred when the two sides entered into the Hypothecation Agreement. Plaintiffs dispute this assertion, and claim that the portion of the Hypothecation Agreement is not a valid deficiency clause, and even if it were, Defendant did not satisfy his obligations under the Agreement, since he failed to properly endorse the stock certificate.

Defendant cannot avoid the undisputed fact that the shares of Code Corporation stock were never properly legally transferred to Plaintiffs. By the terms of the certificate itself, the stock was "transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed." (Def.'s Ex. C.) Under the Uniform Commercial Code, "holder" means "a person who is in possession of a document of title or an instrument or a certified investment security drawn, issued, or indorsed to him or to his order or to bearer or in blank." S.C.Code Ann. § 36–1–201(20). The stock certificate in question was made out explicitly to the owner, Thomas B. Pickens, III.

A holder, as a legal entity, is materially distinct from a bearer. If a legal instrument is made out to bearer, than any party in possession of that instrument is entitled to exchange it, transfer it, or call in the obligation which the instrument represents. A holder, on the other hand, is, as reflected in the UCC's definition given above, a person who is formally legally entitled to do any of those things with the instrument. *See also Black's Law Dictionary* 736 (7th ed. 1999) (defining holder as "[a] person who has legal possession of a negotiable instrument and is entitled to receive payment on it."). Since the stock certificate itself explicitly limited who could transfer it on the books of the corporation to Pickens or an attorney "upon surrender of this certificate properly endorsed," it is clear that even though Plaintiffs received the stock certificate in the mail, they were still legally unable to

transfer the shares of stock in question to another party. Therefore, even if they had so desired, they could not have sold the stock in a commercially reasonable manner, as Defendant asserts they are obligated to do.

Defendant has pointed to the language in the Hypothecation Agreement as the basis for his claim that he is no longer liable to Plaintiffs for the $250,000 plus interest he promised to pay them in the promissory note. However, that release from liability from any deficiency is expressly predicated on a sale of the stock taking place. Defendant further acknowledges this in his Motion for Judgment on the Pleadings, stating, "the Hypothecation Agreement clearly states that Defendant is not responsible for a deficiency *resulting from the sale of the stock.*" (Def.'s Mot. at 3) (emphasis added). Not only did no sale occur here, but no sale could have occurred, since Plaintiffs were never actually in full legal possession of the stock such that they could have sold it at auction.

Accordingly, the court finds that the stock was never actually legally transferred to Plaintiffs, and, in light of the fact that Plaintiffs have disclaimed ownership of the stock in satisfaction for Defendant's debt, Defendant is still the legal owner of the stock on the corporation's records. This means that the portion of the Hypothecation Agreement upon which Defendant based his argument that he had been released from any liability was never triggered, and thus never operated to release Defendant from his obligations under the promissory note. Defendant's Motion for Judgment on the Pleadings is therefore denied.

The Court now turns to Plaintiffs' Motion for Summary Judgment. Plaintiffs essentially seek a judgment affirming Defendant's obligation to pay them $250,000 plus the relevant interest rate under the promissory note. The essential facts that form the basis of Plaintiffs' claim is undisputed—Plaintiffs obtained a judgment against Defendant for $2,886,994.64 plus interest and attorneys' fees, but agreed to drop that judgment in exchange for the $250,000 plus interest provided for in the promissory note. Defendant acknowledged that he defaulted on this amount. The only question, therefore, was whether mailing Plaintiffs the stock certificate discharged all obligation on the part of Defendant. The court has already held that mailing the stock certificate without any sort of endorsement failed to confer the legal rights upon the Plaintiffs which are attendant to owning stock. Since Plaintiffs could take no legal action with regard to the stock, Defendant was still the proper legal owner of the stock, and when Plaintiffs then specifically refused to accept the stock as a discharge of Defendant's obligations under the promissory note and filed a legal action, Defendant remained the actual owner of the stock in the Code Corporation. Therefore, Defendant still owes Plaintiffs the $250,000 plus interest he promised to pay them under the terms of the promissory note. Accordingly, Plaintiffs' Motion for Summary Judgment is granted.

## II. Plaintiffs' Motion to Amend

Plaintiffs have also filed a Motion to Amend. Specifically, Plaintiffs seek to add the theories that the shares are essentially worthless, and to argue that the stock certificate was never properly endorsed. Defendant asserts that to allow Plaintiffs to amend at this point would prejudice him. However, Rule 15 clearly states that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15.

Here, Plaintiffs' allegations about the lack of value of the stock in question are rendered moot by the court's decision that

the stock in question was never properly endorsed and transferred to Plaintiffs, and that Defendant maintains legal control over the stock. This decision was made as a matter of law, and the value (or lack thereof) of the stock has no effect on this holding.

As to Plaintiffs' assertion that Defendant never properly endorsed the stock certificate, Defendant has failed to substantiate his claim that he is somehow prejudiced by this. Plaintiffs raised this claim in their Motion to Amend and their Motion for Summary Judgment, which were filed simultaneously. This was a purely legal question, which Defendant had ample opportunity to address but chose not to, and an issue on which the facts were plainly clear and in need of no further discovery. Defendant does not dispute that he mailed Plaintiffs the stock certificate without properly transferring it through endorsement. No additional amount of time, discovery, or legal debate would change these undisputed facts, nor would it change the court's holding that without a proper legal transfer of the stock shares, Plaintiffs could not have sold the shares and therefore the portion of the Hypothecation Agreement which Defendant's entire case is reliant upon never came into play and thus offers him no protection. In accordance with Rule 15, the court holds that justice requires that the court consider the fact that the stock certificate was not endorsed, and the court holds that Defendant is not improperly prejudiced by this consideration. Accordingly, the court finds that Plaintiffs' Motion to Amend the Complaint is granted.

### CONCLUSIONS

For the foregoing reasons, the court **ORDERS** that Defendant Thomas B. Pickens III's Motion for Judgment on the Pleadings be **DENIED.** The court further **ORDERS** that Plaintiffs' Motion for Summary Judgment and Motion to Amend Complaint both be **GRANTED.**

### AND IT IS SO ORDERED.