**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-2080

PAUL BRAUNSTEIN; KEVIN GASSER; JAMES IHA; D'ARCY BROWN;
CRAIG KANARICK; KATIE FORD; ANDRE BALAZS,

Plaintiffs – Appellees,

v.

THOMAS B. PICKENS, III,

Defendant – Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  Patrick Michael Duffy, Senior
District Judge.  (2:08-cv-00193-PMD)

Argued:  October 28, 2010              Decided:  January 4, 2011

Before KING, DAVIS, and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Thornwell Forrest Sowell, III, SOWELL, GRAY, STEPP &
LAFFITTE, LLC, Columbia, South Carolina, for Appellant.  Andrew
Kenneth Epting, Jr., ANDREW K. EPTING, JR., LLC, Charleston,
South Carolina, for Appellees.  **ON BRIEF**: Amy L. B. Hill, Tina
M. Cundari, SOWELL, GRAY, STEPP & LAFFITTE, LLC, Columbia, South
Carolina, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The defendant, Thomas B. Pickens, III ("Pickens," or the "Defendant"), appeals from the district court's judgment in favor of the plaintiffs, Paul Braunstein, Kevin Gasser, James Iha, D'Arcy Brown, Craig Kanarick, Katie Ford, and Andre Balazs (collectively, the "Plaintiffs"), in this action to recover on a promissory note (the "Promissory Note"). More specifically, Pickens contests the January 20, 2009 Order denying his motion for judgment on the pleadings and granting the Plaintiffs' motions for summary judgment and to amend their Complaint, see Braunstein v. Pickens, 593 F. Supp. 2d 834 (D.S.C. 2009) (the "Summary Judgment Order"), as well as the August 19, 2009 Order denying Pickens's motion for reconsideration, see Braunstein v. Pickens, No. 2:08-cv-00193 (D.S.C. Aug. 19, 2009) (the "Reconsideration Order").[1] As explained below, we affirm.

I.

A.

On November 17, 2004, Pickens executed the Promissory Note, promising to pay the Plaintiffs the principal sum of $250,000.00 on or before July 30, 2007, plus accrued interest at the rate of

_____

[1] The unpublished Reconsideration Order is found at J.A. 130-34. (Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

5% per annum commencing on July 30, 2004.[2] The Promissory Note reflects that it was executed in exchange for the dismissal with prejudice of claims asserted by the Plaintiffs against Pickens in a South Carolina state court proceeding. In that state action, the Plaintiffs had obtained confessions of judgment, signed by Pickens, in the total amount of $2,886,994.64 plus interest and fees.[3]

On the same day that Pickens executed the Promissory Note (November 17, 2004), he also signed a hypothecation agreement (the "Hypothecation Agreement"), pledging his shares of common

---

[2] Although there is some disagreement over certain immaterial facts, the facts material to the resolution of this matter are undisputed. Because the district court awarded summary judgment to the Plaintiffs, we must view the facts and inferences reasonably drawn therefrom in the light most favorable to Pickens. See FOP Lodge No. 89 v. Prince George's Cnty., 608 F.3d 183, 188 (4th Cir. 2010).

[3] As background, the Plaintiffs assert that, between 1996 and 1998, they had invested substantial sums of money in various partnerships of Pickens. In 2000, the Plaintiffs discovered that Pickens had been making personal use of their investment monies. As a result, the Plaintiffs filed the state action against Pickens individually and against various entities controlled by him. After obtaining the confessions of judgment, the state action was stayed pending bankruptcy proceedings, and the Plaintiffs agreed to a $250,000.00 settlement giving rise to the Promissory Note. As Pickens tells the story, both he and the Plaintiffs were the victims of a duplicitous New York financial advisor, and he never promised to be held individually responsible for the confessions of judgment. In any event, as the district court recognized in its Summary Judgment Order, the underlying "sequence of events [is] beyond the scope of the legal issues presented" in the current action. See Braunstein, 593 F. Supp. 2d at 834.

3

stock in the Code Corporation as security for the performance of his obligations under the Promissory Note. See Braunstein, 593 F. Supp. 2d at 835 n.1 (explaining that "[h]ypothecation is defined as the pledging of something as security without delivery of title or possession" (internal quotation marks and alteration omitted)). The Hypothecation Agreement provides that Pickens's lawyer would "hold the shares in escrow and deliver them to Plaintiffs' counsel in the event of any default by Pickens." J.A. 19. Additionally, the Hypothecation Agreement provides that, "[i]n the event of his default on the terms of the Promissory Note . . . , Pickens hereby authorizes the [Plaintiffs] to sell any or all of his shares of stock in the Code Corporation." Id. at 20. The Hypothecation Agreement spells out requirements for such a sale, and specifies that "Pickens shall not remain personally liable for any deficiency." Id.

The July 30, 2007 deadline for Pickens's satisfaction of his obligations under the Promissory Note passed without Pickens having paid the Plaintiffs any of the money owed. Thus, on October 15, 2007, counsel for the Plaintiffs sent a letter to Pickens's lawyer warning that he would file suit if the full amount due — calculated to be $293,023.82 as of October 31, 2007 — was not paid within ten days (the "Plaintiffs' Demand Letter"). Additionally, the Plaintiffs' Demand Letter requests

4

that Pickens's lawyer forward to Plaintiffs' counsel the Code Corporation stock shares pledged in the Hypothecation Agreement as security for the Promissory Note.

On November 12, 2007, Pickens's lawyer sent a response letter to counsel for the Plaintiffs, acknowledging that Pickens had defaulted on his obligations under the Promissory Note and that the Plaintiffs therefore had demanded delivery of the Code Corporation stock shares ("Pickens's Response Letter"). Pickens's Response Letter reflects enclosure of Pickens's original stock certificate for 1,861,938 shares of Code Corporation stock (the "Stock Certificate"), and states that the Plaintiffs "are now entitled to sell any or all of" such shares. J.A. 11. Although the Stock Certificate was indeed enclosed with Pickens's Response Letter, Pickens had not endorsed the backside of the Stock Certificate to show transfer of his shares to the Plaintiffs. Id. at 13-14. Without seeking Pickens's endorsement of the Stock Certificate, the Plaintiffs thereafter initiated this action.

B.

1.

On January 21, 2008, the Plaintiffs filed their Complaint against Pickens in the District of South Carolina, invoking diversity jurisdiction under 28 U.S.C. § 1332. According to the Complaint, Pickens had defaulted on his obligations under the

5

Promissory Note and owed the Plaintiffs the principal sum of $250,000.00 plus accrued interest. The Complaint did not mention the Hypothecation Agreement or Pickens's delivery of the unendorsed Stock Certificate. Nevertheless, copies of Pickens's Response Letter and the unendorsed Stock Certificate were attached as exhibits to the Complaint.

Pickens filed his Answer to the Complaint on April 10, 2008. As the third defense asserted therein, Pickens contended that "[t]he debt owed to Plaintiffs by Defendant pursuant to the Promissory Note was satisfied when Defendant surrendered the Code Corporation Stock to Plaintiffs' counsel." J.A. 16. Pickens's fifth defense was that "Plaintiffs' claims are barred by the terms of the Hypothecation Agreement dated November 17, 2004 executed by Defendant and accepted by Plaintiffs." Id. A copy of the Hypothecation Agreement and a frontside-only copy of the Stock Certificate (omitting the unendorsed backside) were attached as exhibits to the Answer.

On April 17, 2008, the district court entered a Scheduling Order, establishing a June 9, 2008 deadline for motions to amend the pleadings, an October 7, 2008 discovery deadline, and an October 22, 2008 deadline for dispositive motions. The Scheduling Order reflects that, although "[l]ate requests to amend [the pleadings are] strongly discouraged," such requests could be justified with adequate explanation. See J.A. 26. The

6

Scheduling Order was initially characterized as "tentative," id. at 27, but it was never formally changed. According to the parties, however, they subsequently agreed to an abbreviated schedule requiring them to submit dispositive motions by June 17, 2008.

On June 17, 2008, Pickens filed a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings. In support of his motion, Pickens contended that, pursuant to the Hypothecation Agreement, he had satisfied his obligations under the Promissory Note by delivering the Stock Certificate to the Plaintiffs. That same day (June 17, 2008), the Plaintiffs filed a Rule 56 motion for summary judgment. In their supporting memorandum, the Plaintiffs maintained that Pickens "cannot claim that he has delivered the stock, as it has never been endorsed over to the Plaintiffs. Nor can he claim that the Plaintiffs accepted the stock in satisfaction of the admitted debt." J.A. 48. The Plaintiffs attached an affidavit of their counsel opining that the Stock Certificate "was not signed in order to ensure that the stock could not be sold," and that, in any event, the Plaintiffs "reject the sale of the collateral[, i.e., the Code Corporation stock shares] as their remedy" because, since filing this action, they had learned that such shares were "worthless." Id. at 80.

7

Also on June 17, 2008, the Plaintiffs filed a Rule 15(a)(2) motion to amend their Complaint. The proposed Amended Complaint included two new allegations: (1) that "[t]he Defendant has not delivered his shares of stock in the Code Corporation"; and (2) that, "[e]ven if the Defendant had delivered the stock, Plaintiffs have elected not to satisfy the [Promissory Note] by disposition of the collateral, as it is worthless." J.A. 84. In the proposed Amended Complaint, the Plaintiffs also asserted that they were filing the original Stock Certificate in the district court "as evidence of their rejection of the collateral." Id.

On July 7, 2008, Pickens filed his response in opposition to the Plaintiffs' summary judgment motion. In his response, Pickens refrained from contending that providing the Plaintiffs with the unendorsed Stock Certificate was sufficient to satisfy his Promissory Note obligations. Rather, Pickens asserted that the Plaintiffs' summary judgment motion constituted the first time that the Plaintiffs had raised an issue with the failure to endorse the Stock Certificate or the value of the Code Corporation stock shares. According to the response, Pickens's lawyer had since contacted counsel for the Plaintiffs to offer to remedy the lack of an endorsement, which had been an oversight. Thus, Pickens asserted, the Plaintiffs were actually seeking a deficiency judgment — the difference between the

8

amount owed on the Promissory Note and the value of the Code Corporation stock shares — which was explicitly precluded by the Hypothecation Agreement.

Additionally, on July 7, 2008, Pickens filed a response in opposition to the Plaintiffs' motion to amend. Pickens asserted that he would be unduly prejudiced if the motion to amend were granted, and that the proposed amendments would be futile because he was willing to endorse the Stock Certificate. Finally, on July 7, 2008, the Plaintiffs filed their response to Pickens's motion for judgment on the pleadings, reiterating both their position that the Stock Certificate was not properly assigned and their rejection of the Code Corporation stock shares in satisfaction of Pickens's obligations under the Promissory Note.

2.

By its Summary Judgment Order of January 20, 2009, the district court disposed of the Plaintiffs' motions for summary judgment and to amend their Complaint, as well as Pickens's motion for judgment on the pleadings (which the court treated as a summary judgment motion). In granting summary judgment to the Plaintiffs — and denying it to Pickens — the court explained:

> Plaintiffs essentially seek a judgment affirming Defendant's obligation to pay them $250,000 plus the relevant interest rate under the promissory note. The essential facts that form the basis of Plaintiffs' claim is undisputed — Plaintiffs obtained a judgment

9

against Defendant for $2,886,994.64 plus interest and attorneys' fees, but agreed to drop that judgment in exchange for the $250,000 plus interest provided for in the promissory note. Defendant acknowledged that he defaulted on this amount. The only question, therefore, was whether mailing Plaintiffs the stock certificate discharged all obligation on the part of Defendant. . . . [M]ailing the stock certificate without any sort of endorsement failed to confer the legal rights upon the Plaintiffs which are attendant to owning stock. Since Plaintiffs could take no legal action with regard to the stock, Defendant was still the proper legal owner of the stock, and when Plaintiffs then specifically refused to accept the stock as a discharge of Defendant's obligations under the promissory note and filed a legal action, Defendant remained the actual owner of the stock in the Code Corporation. Therefore, Defendant still owes Plaintiffs the $250,000 plus interest he promised to pay them under the terms of the promissory note.

Braunstein, 593 F. Supp. 2d at 839.

Additionally, the district court granted the Plaintiffs' motion to amend their Complaint "to add the theories that the shares are essentially worthless" and "that the stock certificate was never properly endorsed." Braunstein, 593 F. Supp. 2d at 839. With respect to the "worthlessness" theory, however, the court observed that "allegations about the lack of value of the stock in question are rendered moot by the court's decision that the stock in question was never properly endorsed." Id. at 839-40. Furthermore, with respect to the "endorsement" theory, the court concluded that Pickens failed to demonstrate he would be prejudiced by amendment of the Complaint. The court explained:

10

> Plaintiffs raised [the "endorsement" theory] in their
> Motion to Amend and their Motion for Summary Judgment,
> which were filed simultaneously. This was a purely
> legal question, which Defendant had ample opportunity
> to address but chose not to, and an issue on which the
> facts were plainly clear and in need of no further
> discovery. Defendant does not dispute that he mailed
> Plaintiffs the stock certificate without properly
> transferring it through endorsement. No additional
> amount of time, discovery, or legal debate would
> change these undisputed facts, nor would it change the
> court's holding that without a proper legal transfer
> of the stock shares, Plaintiffs could not have sold
> the shares and therefore the portion of the
> Hypothecation Agreement which Defendant's entire case
> is reliant upon never came into play and thus offers
> him no protection.

Id. at 840. The court concluded that, "[i]n accordance with Rule 15, . . . justice requires that the court consider the fact that the stock certificate was not endorsed, and the court holds that Defendant is not improperly prejudiced by this consideration." Id.

3.

On February 3, 2009, Pickens filed a motion for reconsideration, requesting the district court to alter or amend the judgment under Rule 59(e). Pickens therein raised — for the first time in these proceedings — numerous arguments as to why providing the Plaintiffs with the unendorsed Stock Certificate satisfied his obligations under the Promissory Note. Additionally, Pickens reiterated his summary judgment contention that he had offered to remedy the lack of an endorsement. Pickens also asserted that the court erred by granting summary

11

judgment on the basis of issues raised only in the Plaintiffs' motion to amend their Complaint, in that such motion was granted in conjunction with the summary judgment award.

In addition to filing his motion for reconsideration on February 3, 2009, Pickens filed an Answer to the Amended Complaint. The next day (February 4, 2009), he filed an Amended Answer to the Amended Complaint. On February 23, 2009, the Plaintiffs filed a response to Pickens's motion for reconsideration, asserting that he had not satisfied the standard for Rule 59(e) relief and that his contentions were without merit.

On March 5, 2009, Pickens filed a reply memorandum in support of his motion for reconsideration, yet again raising a new contention: that, based on the bare statement in the Hypothecation Agreement that "Pickens shall not remain personally liable for any deficiency," J.A. 20, he was no longer liable on the Promissory Note once he provided the Plaintiffs with the unendorsed Stock Certificate, even without a sale of the stock shares. Pickens also refined his contention that it was improper to grant summary judgment on the basis of issues raised only in the Plaintiffs' concurrently granted motion to amend their Complaint. In that regard, Pickens asserted that the summary judgment award was premature because he had not been afforded the opportunity to answer the Amended Complaint.

12

Pickens also pointed out that it was unclear whether the Amended Complaint had actually been filed in the district court, and that he had filed his Answer to the Amended Complaint out of an abundance of caution.

4.

By its Reconsideration Order of August 19, 2009, the district court denied Pickens Rule 59(e) relief on the ground that "the previous [Summary Judgment] Order need not be amended or altered in order to correct a clear error of law or to avoid a manifest injustice." Reconsideration Order 5. The court specifically addressed several of Pickens's arguments, including the contention in his reply memorandum that the Hypothecation Agreement does not require a sale of his Code Corporation stock in order to satisfy his obligations under the Promissory Note. On this issue, the court observed:

> Defendant claims that, "[t]he simple statement in the Hypothecation Agreement is, 'Pickens shall not remain personally liable for any deficiency.' This is a one sentence statement. It does not have any contingencies surrounding it." The Court disagrees. If this were, in fact, "a one sentence statement," without "any contingencies surrounding it," then Defendant would have been immediately released from any obligation as soon as Plaintiffs signed the Hypothecation Agreement. However, this would have run directly counter to the express purpose of the Hypothecation Agreement, which was to ensure that Defendant paid the small fraction of the damages he had allegedly caused to Plaintiffs [as] he had previously promised. Here, Defendant seeks to avoid this obligation.

The most logical reading of the portion of the Hypothecation Agreement in question is that Defendant would be released from his obligation upon sale of the stock . . . . Plaintiffs clearly were not simply releasing Defendant from his obligations. Instead, they were seeking some security that Defendant would in fact perform these obligations, by reserving the right to sell the shares of stock in question to obtain what was due to them. Here, the stock was never sold, Defendant acknowledges that no attempt to sell the stock was ever [made], and Defendant acknowledges that the stock is no longer in Plaintiffs' possession.

Exactly why Plaintiffs' counsel demanded the shares of stock and then refused possession and sale of the stock is unclear. However, the reason is not relevant to the matter before the Court. What does matter is that Defendant has failed to live up to his obligations under the settlement and subsequent Hypothecation Agreement, and that Plaintiffs never sold the shares of stock in Code Corporation, which would have released Defendant from those obligations.

Id. at 4-5 (first alteration in original) (citation omitted).

The district court also rejected Pickens's contention that the summary judgment award was premature because he had not been afforded the opportunity to answer the Amended Complaint after the court authorized its filing. The court explained that Pickens "did have an opportunity to respond, since he filed an Answer to the Amended Complaint." Reconsideration Order 4. The court further recognized that, in any event, "it is undisputed that the stock certificate was not indorsed when it was delivered to Plaintiffs' counsel." Id.

14

Pickens timely noted this appeal from the Summary Judgment Order and the Reconsideration Order, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review a district court's ruling on a motion for leave to amend a complaint for abuse of discretion, bearing in mind that, under Rule 15(a)(2), such leave should freely be given "when justice so requires." See Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002). "The law is well settled that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (internal quotation marks omitted).

We review de novo a district court's award of summary judgment, viewing the facts and inferences reasonably drawn therefrom in the light most favorable to the nonmoving party. See FOP Lodge No. 89 v. Prince George's Cnty., 608 F.3d 183, 188 (4th Cir. 2010). Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

We review a district court's denial of a Rule 59(e) motion for abuse of discretion. See Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir. 2005). "[A] court may grant a Rule 59(e) motion in three circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Id. (internal quotation marks omitted). Importantly, Rule 59(e) "permits a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (internal quotation marks omitted). "Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Id.

III.

On appeal, Pickens first contends that the district court erred in concurrently granting the Plaintiffs' motions for summary judgment and to amend their Complaint without first affording him an opportunity to answer the Amended Complaint. In that regard, Pickens points to the court's observation in its Reconsideration Order that Pickens "did have an opportunity to

16

respond, since he filed an Answer to the Amended Complaint" — a statement that ignores the fact that Pickens's Answer necessarily post-dated the Summary Judgment Order granting the Plaintiffs' motion to amend. See Reconsideration Order 4. Additionally, Pickens asserts the theory — not raised in the district court or supported by citation to any authority — that the court erred by granting the Plaintiffs' motion to amend even though it was filed after the Scheduling Order's deadline for such motions. Unfortunately for Pickens, even assuming the court erred in its handling of the Plaintiffs' motion to amend, its error was harmless. See Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984) ("[I]t is well settled that the appellate courts should act in accordance with the salutary policy embodied in Rule 61.").

Simply put, there was no need for the Plaintiffs to amend their Complaint to address the issue of whether Pickens satisfied his Promissory Note obligations pursuant to the terms of the Hypothecation Agreement, because that issue was first raised in these proceedings by Pickens himself. More specifically, once the Plaintiffs had alleged in their original Complaint of January 21, 2008, that Pickens had defaulted on his

Promissory Note obligations, Pickens filed an April 10, 2008 Answer asserting the defenses that "[t]he debt owed to Plaintiffs by Defendant pursuant to the Promissory Note was satisfied when Defendant surrendered the Code Corporation Stock to Plaintiffs' counsel" and that "Plaintiffs' claims are barred by the terms of the Hypothecation Agreement dated November 17, 2004 executed by Defendant and accepted by Plaintiffs." J.A. 16. In these circumstances, the Plaintiffs were entitled to refute Pickens's defenses in their dispositive motion papers, without any need to amend their Complaint. And, as the district court properly recognized, Pickens had "ample opportunity" at the summary judgment stage to address the Plaintiffs' Hypothecation Agreement-related contentions, "but chose not to" do so. See Braunstein, 593 F. Supp. 2d at 840.

Pickens also contends on appeal that the district court's summary judgment award was inappropriate because "questions of material fact exist." Br. of Appellant 18. Many of the "questions of material fact" identified by Pickens are actually questions of law. Moreover, Pickens failed to raise any of those issues at the summary judgment stage, as his entire defense against the Plaintiffs' summary judgment motion was that he was willing to provide an endorsement of the Stock Certificate. And, although Pickens belatedly raised some of his "questions of material fact" at the reconsideration stage (e.g.,

18

that he could satisfy his Promissory Note obligations pursuant to the Hypothecation Agreement without a sale of the Code Corporation stock), other issues were even more belatedly introduced in this appeal (e.g., that the Plaintiffs accepted the original Stock Certificate by submitting it to the district court rather than returning it to him).

Having had the benefit of oral argument and having carefully considered the briefs, the Joint Appendix, and the applicable authorities, we are satisfied that the district court properly awarded summary judgment in this matter. Furthermore, we are satisfied that the court did not abuse its discretion in refusing to alter or amend the judgment under Rule 59(e). Accordingly, we affirm the judgment entered in favor of the Plaintiffs, substantially for the reasons spelled out by the district court in its Summary Judgment Order and subsequent Reconsideration Order.

<u>AFFIRMED</u>

19